**William ADAMS, Plaintiff,**

**v.**

**Ivan RIVERA, Anthony Saliba, and Emmy Pena, Defendants.**

**No. 94 CIV. 0065(JSR).**

United States District Court,
S.D. New York.

July 31, 1998.

Donald E. Cameron, New York City, for Plaintiff.

Sherwin A. Suss, New York City, for Defendant.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

In this § 1983 action, plaintiff sued for $1,475,000 and recovered $1,080. After extended delay, he filed for $27,095 in attorneys' fees. Common sense suggests that he might better have foregone the filing altogether. Application of the law leads to the same conclusion.

In the underlying action, plaintiff brought suit against five defendants, asserting four claims under 42 U.S.C. § 1983 and seeking $475,000 in compensatory damages and $1 million in punitive damages. Three claims and three defendants remained when the case went to the jury: malicious prosecution against defendants Rivera and Saliba, excessive force against defendants Pena and Rivera, and false arrest against defendants Pena

and Rivera. The jury found for defendants on all counts except the excessive force claim, on which they awarded plaintiff the grand total of $1,080, consisting of $540 in compensatory damages from each of the two defendants against whom that claim was brought. Judgment was entered on October 3, 1997.

On January 29, 1998, some one hundred eighteen days after the entry of judgment, plaintiff moved for $27,095 in attorneys' fees pursuant to 42 U.S.C. § 1988. To say that the motion was belated is to belabor the obvious, since Federal Rule of Civil Procedure 54(d)(2)(B) provides that "[u]nless otherwise provided by statute or order of the court, the motion [for attorneys' fees] must be filed and served no later than 14 days after entry of judgment . . . ."

Nonetheless, in such cases, "district courts may grant extensions of time . . . upon a showing of 'excusable neglect,'" *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (quoting Fed.R.Civ.P. 6(b)(2)), and plaintiff seeks to be so excused. In assessing such showings, a court should take into account "the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Assoc.*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).[1] Applying these criteria to the instant motion, the Court finds that plaintiff's delay poses a significant danger of prejudice to defendants, is excessively long

by any relevant standard, and is not justified by any legitimate excuse.

As to prejudice, defendants aver that, had they known plaintiffs would request fees, they might well have decided to appeal the verdict, since such a contingency would increase their potential liability 26–fold.[2] This is precisely the kind of prejudice the Advisory Committee had in mind when it recommended the amendments to Rule 54(d)(2)(B) imposing the 14–day time limit. *See* Fed. R.Civ.P. 54(d)(2)(B) Adv. Comm. Notes 1993 ("One purpose of the provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed.").

As to length of delay, the vast difference between the 14 days allotted by Congress to file such a motion and the 118 days taken by plaintiff's counsel to actually do so here speaks for itself.

Finally, as to excuse, plaintiff claims that he refrained from filing his motion because he was involved in good faith negotiations with defense counsel regarding recovery of such fees and defendants never informed him that they might raise a timeliness objection if negotiations were to collapse. But the excuse is lame, not just because defendants were under no obligation to volunteer their defenses, but also because, by plaintiff's counsel's own admission, these fee negotiations did not even begin until December 8, 1997, a full 52 days after the Rule 54(d)(2)(B) deadline had already passed. *See* Cameron Aff. ¶ 11.[3]

---

1. Although *Pioneer* applied these criteria in the context of Bankruptcy Rule 9006(b), the Court took note of the nearly identical language of Federal Rule of Civil Procedure 6(b). *See Pioneer*, 507 U.S. at 391, 113 S.Ct. 1489. The *Pioneer* criteria have been held by the Second Circuit to apply to filings under Federal Rule of Appellate Procedure 4(a), *see United States v. Hooper*, 9 F.3d 257, 259 (2d Cir.1993), and have been applied by district courts in this Circuit to filings under Rule 54(d)(2)(B), *see, e.g., Blissett v. Casey*, 969 F.Supp. 118, 122–24 (N.D.N.Y.1997), *aff'd on other grounds*, 147 F.3d 218 (2d Cir. 1998).

2. Plaintiff's counsel, for his part, undertook no appeal on plaintiff's behalf, although it appears that plaintiff may now be seeking to perfect an appeal *pro se.*

3. Plaintiff's attorney also contends that a conversation with Chambers caused him to believe, to his detriment, that if he and defense counsel were unable to agree upon fees, the Court would overlook the 14–day time limit in considering plaintiff's motion. But the conversation occurred on December 22, 1997—66 days past the deadline—and therefore could not have caused plaintiff to lose any opportunity he had not already squandered. Furthermore, the notes and recollection of the law clerk with whom plaintiff's counsel spoke clearly reflect that Chambers never stated or implied that a motion for attorneys' fees, if filed, would not be dismissed on timeliness grounds. Rather, Chambers merely advised counsel, who indicated that both sides were attempting to settle their fee dispute, to call back for the pre-motion conference required by

■ In short, plaintiff's motion must be denied on grounds of untimeliness. It remains only to add that, even if this Court could somehow overlook plaintiff's gross and prejudicial delay in bringing this motion, it would deny the motion on the ground that his "victory" was technical and de minimis. *See Farrar v. Hobby,* 506 U.S. 103, 117, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (O'Connor, J., concurring).

The statute under which plaintiff seeks fees, 42 U.S.C. § 1988, provides in pertinent part that "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. In *Farrar,* the most recent Supreme Court case interpreting "reasonable" in the context of § 1988, the Supreme Court held that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Farrar,* 506 U.S. at 115, 113 S.Ct. 566 (citation omitted), *cited in LaRouche v. Kezer,* 20 F.3d 68, 71 (2d Cir.1994); *accord, e.g., McCardle v. Haddad,* 131 F.3d 43, 55 (2d Cir.1997); *Pino v. Locascio,* 101 F.3d 235, 239 (2d Cir.1996); *Caruso v. Forslund,* 47 F.3d 27, 31 (2d Cir.1995).

■ Of itself, this holding would not preclude an award of attorneys' fees here, since the jury in the case at bar found actual, rather than nominal damages. *See, e.g., Magnett v. Pelletier,* 488 F.2d 33, 35 (1st Cir.1973) (per curiam) (holding that a damage award of $500 in a civil rights case was not "nominal"). *But see, e.g., Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996) (" 'Nominal damages' is not limited to an award in the amount of $1, but includes an award that may properly be classified as 'de minimis.' "). But, by the same token, nothing in *Farrar* requires the award of attor-

neys' fees to a prevailing party simply because its recovery is more than the one dollar given for nominal damages.

Further guidance is provided, however, by Justice O'Connor's concurring opinion in *Farrar,* which suggests that, "[w]hen the plaintiff's success is purely technical or de minimis, no fees can be awarded," *Farrar,* 506 U.S. at 117, 113 S.Ct. 566 (O'Connor, J., concurring). For these purposes, a plaintiff's victory is "purely technical" or "de minimis" if there is a substantial difference between the damages sought and the damages awarded, the legal issue on which plaintiff prevails is relatively unimportant, and the litigation serves no discernible public purpose. *See id.* at 121–22, 113 S.Ct. 566.

Although Justice O'Connor's tripartite test was not the holding of the Court, it has received wide recognition, with some or all of its criteria having been applied by courts in this Circuit. *See, e .g., Cabrera v. Jakabovitz,* 24 F.3d 372, 393 (2d Cir.1994); *Schwenk v. Kavanaugh,* No. 94–CV–773, 1998 WL 259907, at *2 (N.D.N.Y. May 14, 1998); *Calovine v. City of Bridgeport,* No. 3:94CV00379, 1998 WL 171432, at *2 (D.Conn. Feb.4, 1998); *Red Cloud–Owen v. Albany Steel, Inc.,* 958 F.Supp. 94, 97 (N.D.N.Y.1997); *Haywood v. Koehler,* 885 F.Supp. 624, 629 (S.D.N.Y. 1995), *aff'd on other grounds,* 78 F.3d 101 (2d Cir.1996); *see also Pino,* 101 F.3d at 239 ("The vast majority of civil rights litigation does not result in ground-breaking conclusions of law, and therefore, will only be appropriate candidates for fee awards if a plaintiff recovers some significant measure of damages or other meaningful relief.").[4] The O'Connor criteria have also been adopted in four other Circuits. *See Phelps v. Hamilton,* 120 F.3d 1126, 1131 (10th Cir.1997); *Morales,* 96 F.3d at 363; *Jones v. Lockhart,* 29 F.3d 422, 423–24 (8th Cir.1994); *Cartwright v. Stamper,* 7 F.3d 106, 109–10 (7th Cir.1993).

Application of these criteria in the instant case clearly demonstrates that plaintiff's "vic-

---

the Court's Individual Rules if and when a party desired to make a motion.

4. *Cf. Carroll v. Blinken,* 105 F.3d 79, 81 (2d Cir.1997) ("[I]n determining the reasonableness of a fee award in civil rights actions, the quantity and quality of relief obtained is a critical factor.

Where the damage award is nominal or modest, the injunctive relief has no systemic effect of importance, and no substantial public interest is served, a substantial fee award cannot be justified.").

tory" does not qualify for an award of attorneys' fees. Plaintiff sought nearly $1.5 million in compensatory and punitive damages[5] and received only $1,080 in compensatory damages, an amount that cannot be considered "significant" on any fair analysis of this case. *Pino,* 101 F.3d at 239.[6] He prevailed against only two of five originally named defendants, and on only one of his four claims. He sought no material non-monetary relief, *see, e.g., LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 759 (2d Cir.1998), established no legal principle, *see, e.g., Cabrera,* 24 F.3d at 393, and no "new rule of liability," *see, e.g., Red Cloud–Owen,* 958 F.Supp. at 96 (citation and internal quotation marks omitted), and accomplished no readily discernible public purpose. Indeed, the jury effectively chose *not* to send a message to the law enforcement community when it declined to award punitive damages, *see, e.g., Schwenk,* 1998 WL 259907, at *3, and awarded the most modest compensatory damages. In short, this case accomplished essentially nothing other than consuming substantial time, energy, and resources of this Court and the judicial process.

To be sure, the public interest in encouraging injured parties to vindicate their civil rights is such that attorneys' fees should sometimes be awarded to prevailing plaintiffs even when damages are very modest. *See, e.g., City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 444 n. 4, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (Brennan, J., concurring)); *Cabrera,* 24 F.3d at 393; *Cowan v. Prudential Insurance Co.,* 935 F.2d 522, 526 (2d Cir.1991). But there is also a public interest in preventing dubious or trivial claims from flooding the federal courts. Thus, for example, the Supreme Court held in *Farrar* that although

plaintiff-petitioner was technically a prevailing party, his "victory" was not the kind Congress intended to encourage through the fee-shifting provisions of § 1988. *See Farrar,* 506 U.S. at 115, 113 S.Ct. 566. Similarly, this plaintiff's technical and de minimis victory does not qualify him for attorneys' fees. To hold otherwise and thereby encourage the filing of doubtful or inconsequential § 1983 actions would only make a mockery of the sacred rights that the civil rights laws are designed to safeguard.

For the foregoing reasons, plaintiff's motion for attorneys' fees is denied.

SO ORDERED.

---

**5.** Plaintiff did not, in his summation, request that the jury return damages in a specific amount, but did specify, in the Joint Pretrial Order, that he had suffered damages totaling $150,000 in pain and suffering, $100,000 due to loss of liberty, $75,000 due to malicious prosecution, $100,000 due to deprivation of rights and civil liberties, and $50,000 in emotional distress. Plaintiff also claimed $1,000,000 in punitive damages.

**6.** Plaintiff points to *Lunday v. City of Albany,* 42 F.3d 131 (2d Cir.1994) (per curiam), to demonstrate that the Second Circuit has upheld awards of attorneys' fees to plaintiffs who have recovered damages that are modest compared to those requested. *See id.* at 135 (upholding award of fees to a plaintiff who recovered $35,000 on a $7.13 million claim). However, *Lunday* is distinguishable because, unlike the jury in the instant case, the *Lunday* jury awarded punitive damages. *See id.* at 133.