NORWEST FINANCIAL, INC., Plaintiff,

v.

Juan Carlos FERNANDEZ and Gustavo Carlos Lanzillotta, Defendants.

No. 98 CIV. 6635(SAS).

United States District Court, S.D. New York.

Sept. 7, 2000.

David Dunn, Hogan & Hartson, LLP, New York City, for Plaintiff.

Oleg Rivkin, Fox Horan & Camerini, LLP, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

### I. BACKGROUND

In January 1998, Norwest Financial, Inc. ("Norwest") purchased an Argentine consumer finance company, Finvercon S.A. Compania Financiera ("Finvercon") from defendants, who remained employed with the company until they were terminated in September 1998. Norwest then sued the defendants seeking, *inter alia*, damages for defendants' breach of the Stock Purchase Agreement, a declaratory judgment stating that defendants were properly terminated, and injunctive relief relating to a non-competition clause contained in the Seller's Director Agreements. Defendants filed various counterclaims seeking, *inter*

*alia,* reimbursement of monies paid to satisfy a tax judgment against Finvercon. Following a nine-day bench trial, I held, in part, that: (1) defendants breached the Stock Purchase Agreement when they failed to pay Norwest for claimed Credit Losses on demand; (2) defendants were properly terminated for failing to satisfy certain requirements of the Stock Purchase Agreement; (3) Norwest was not entitled to injunctive relief for any alleged breach of a non-competition clause; and (4) defendants were entitled to reimbursement from Norwest for any penalties and interest flowing from the tax judgment. *See Norwest Fin., Inc. v. Fernandez,* 86 F.Supp.2d 212 (S.D.N.Y.2000).[1]

Norwest now seeks attorneys' fees and expenses in the amount of $1,514,422.68 pursuant to an attorneys' fee provision in the Stock Purchase Agreement. This request breaks down as follows: $883,780.00 in attorneys' fees to the law firm of Davis Weber & Edwards[2] ("DW & E"), attorneys · for Norwest; $255,362.68 in costs incurred by DW & E; $284,823.00 in attorneys' fees to the law firm of Cibilis Robirosa & Labougle ("CR & L"), local Argentine counsel for Norwest; and $90,457.00 in costs incurred directly by Norwest, consisting of $57,-510.32[3] in travel expenses of Norwest's in-house counsel and most of the remainder in expert witness fees. For the following reasons, defendants are liable to Norwest for attorneys' fees and costs in the amount of $884,879.33.

## II. DISCUSSION

The Stock Purchase Agreement, which contractually entitles Norwest to the reimbursement of attorneys' fees, states in relevant part:

> Sellers, jointly and severally, will indemnify and hold harmless Buyer, the Company, and their respective representatives, stockholders, controlling persons, and affiliates (collectively, the "Indemnified Persons") for, and will pay to the Indemnified Persons the amount of, any loss, liability, claim, damage (including incidental and consequential damages), *expense (including costs of investigation and defense and reasonable attorneys' fees)* or diminution of value, whether or not involving a third-party claim (collectively, "Damages"), arising, directly or indirectly, from or in connection with:
> (a) any breach of any representation or warranty made by Sellers in this Agreement, . . .
> (b) any litigation or regulatory proceeding arising directly or indirectly or from or in connection with any representation, warranty or covenant, or guarantee made by Sellers in this Agreement, including, without limitation, any Proceeding regarding Takes;
> (c) any breach by any Seller or any covenant or obligation of such Seller in this Agreement; . . .
> (e) any Credit Loss or Noncredit Loss.

§ 12.2 of the Stock Purchase Agreement, attached as Ex. A to the First Amended Complaint (emphasis added).

This attorneys' fees clause is not a typical "fee-shifting" clause in that it requires defendants to compensate Norwest for attorneys' fees whether or not it prevails. *See Krumme v. Westpoint Stevens Inc.,* 79 F.Supp.2d 297, 300 (S.D.N.Y.1999) ("West-

---

**1.** Familiarity with this Opinion and Order is assumed for purposes of this motion.

**2.** The firm of Davis Weber & Edwards has changed its name to Hogan & Hartson since the trial. For the sake of simplicity, DW & E will be used throughout this Opinion.

**3.** *See* Defendants' Memorandum Of Law In Opposition To Plaintiff's Motion For Attorneys' Fees And Costs ("Opp.Mem.") at 10. As

plaintiff does not dispute this amount, *see* Norwest's Reply Memorandum In Further Support Of Its Application For Attorneys' Fees And Costs ("Reply Mem.") at 4, this Court will accept this figure without a time-consuming and laborious review of each and every expense report submitted with the Declaration of Christopher P. Keiser In Support Of Plaintiff's Application For Attorneys' Fees And Costs.

point must compensate participants for legal expenses regardless of whether the participants prevail on their claims."). There are, however, two requirements before defendants' liability for attorneys' fees attaches: (1) the fees and expenses must relate to a breach of the Stock Purchase Agreement;[4] and (2) they must be reasonable.

### A. Claims Related to the Stock Purchase Agreement

Norwest seeks reimbursement of its fees and expenses relating to each of its claims and for its defense of each counterclaim brought by defendants. The problem for Norwest is that some of its claims related solely to the Seller's Director Agreements, not to the Stock Purchase Agreement. For example, Norwest's Credit Loss claims were predicated on the Stock Purchase Agreement. On the other hand, Norwest's claims relating to the defendants' personal loans, including its claim for alleged breach of the non-competition clause, were predicated solely on the Seller's Director Agreements and therefore are not compensable under the Stock Purchase Agreement's attorneys' fee provision.

■ Norwest's termination claim presents a slightly more difficult question because it was predicated on both the Stock Purchase Agreement and the Seller's Director Agreements. Essentially, Norwest alleged that the defendants were terminated for cause under the Seller's Director Agreements because they breached the Stock Purchase Agreement. In order to prove that it properly terminated the defendants, Norwest had to prove the underlying breaches of the Stock Purchase Agreement. I concluded that Norwest satisfied this burden by proving that the defendants had failed to pay a tax judgment and post required collateral. *See Norwest,* 86 F.Supp.2d at 229–32. The

parties also disputed whether the Seller's Director Agreements were governed by commercial law or labor law of Argentina. *See id.* at 226–29. Fees and expenses related to this dispute, which solely involved the Seller's Director Agreements, are not compensable under the Stock Purchase Agreement's attorneys' fee provision. Similarly, Norwest alleged that it properly terminated the defendants because they breached the Seller's Director Agreements by making personal loans and violating the non-competition clause. Fees and expenses for those claims also are not compensable.

■ Because Norwest is only entitled to compensation for claims predicated on the Stock Purchase Agreement, the next step is to determine what percentage of the work performed by DW & E and CR & L was devoted to claims that related to the Stock Purchase Agreement and to the Seller's Director Agreements. Based upon my review of the transcript of the nine-day trial and my January 12, 2000 Opinion, as well as my recollection of the number of conferences, amount of argument and correspondence with this Court and between the parties, I conclude that thirty-five percent of the time spent and costs incurred by DW & E were devoted to claims unrelated to the Stock Purchase Agreement. Therefore, only sixty-five percent of its fees and costs will be included in this fee award. *Cf. Luciano v. Olsten Corp.,* 109 F.3d 111, 117 (2d Cir.1997) ("A district court can exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours.") (citation omitted).

Plaintiff claims that CR & L assisted Norwest in the examination of witnesses in Argentina, the location and preparation of expert witnesses, and the development of issues of Argentine law. *See* Reply Mem.

**4.** The Seller's Director Agreements, for their part, contain no analogous attorneys' fee provision.

at 6. One of Norwest's experts—Dr. Ruben Segal—testified as to whether the Seller's Director Agreements were governed by the commercial law or the labor law of Argentina. *See Norwest,* 86 F.Supp.2d at 227. Because Dr. Segal's testimony related solely to the proper interpretation of the Seller's Director Agreements, however, any work related to his testimony is not compensable. In addition, any research by CR & L on the question of whether the commercial law or labor law governed the Seller's Director Agreements also is not compensable. Norwest's other expert—Dr. Adolfo Atchabahain—testified as to whether Finvercon could have raised any reasonable defenses to the Argentine government's disallowance of certain tax deferrals. *See Norwest,* 86 F.Supp.2d at 233–34. Because Dr. Atchabahain's testimony related to an alleged breach of the Stock Purchase Agreement, any work related to his testimony (as well as any other legal research on the issue) is compensable.

In addition, the parties dispute the degree to which the discovery taken by CR & L in Argentina related to the improper loans, a non-compensable subject area. In support of their argument, defendants identify a number of depositions (or Argentine examinations) which, they allege, related to the non-compensable unfair competition and personal loan claims. Four of those witnesses—Ruben Pardo, Carla Baldini, Nora Escribas and Salvador Pristera—either testified at the trial or had portions of their Argentine testimony read into the record. Defendants admit that all four testified, in whole or in part, about compensable claims. That leaves six depositions which, according to defendants, related solely to noncompensable claims. Although I note that Norwest challenges the accuracy of defendants' summaries of those depositions, I need not examine the issue further. My own recollection of the Argentine portion of this case, combined with my analysis of defendants' arguments, leads me to conclude that the portion of CR & L's work on claims unrelated to the Stock Purchase Agreement is fifty percent. Accordingly, only fifty percent of their fees must be paid by defendants.

## B. Reasonableness of the Fees and Expenses

"While it is true that each party to a litigation normally must bear its own expenses, it is clear that the parties may by contract agree to permit recovery of attorney's fees as part of plaintiff's expenses in prosecuting suit." *Alland v. Consumers Credit Corp.,* 476 F.2d 951, 955 (2d Cir.1973). Furthermore, "[a]s a general matter of New York law, which the [contract] provided was to govern, when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2d Cir.1987). In determining what is reasonable, the following factors, among others, are relevant: " 'the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.' " *Id.* (quoting *In re Schaich,* 55 A.D.2d 914, 391 N.Y.S.2d 135, 136 (2d Dep't 1977)).

In this action, plaintiff sought damages in excess of $13.5 million for unpaid Credit Losses. David Dunn, who has practiced law for over 21 years, was Norwest's lead counsel. *See* Declaration of David Dunn, attorney for Norwest, dated March 17, 2000 ("Dunn Decl.") ¶¶ 3, 5. Annexed to Dunn's Declaration are copies of detailed invoices rendered by DW & E documenting the time spent and expenses incurred on the case. Norwest was billed on the basis of services provided at fixed hourly rates which were charged at DW & E's usual and customary rates. *Id.* ¶ 4. Thus,

there is nothing in Dunn's Declaration that would disqualify the fee request on grounds of reasonableness. *See Banca Della Svizzera Italiana v. Cohen,* 756 F.Supp. 805, 808 (S.D.N.Y.1991) (reasonableness standard met where attorney's affidavit stated that hourly rates were firm's standard rates and sufficiently documented number of hours billed with a summary description of how those hours were spent).

Defendants nonetheless object to Norwest's request for fees on numerous grounds, some legitimate and some not. *First,* defendants argue that from the redacted invoices provided to them, it appears that duplicative work was performed by several attorneys who worked on the case. *See* Opp. Mem. at 2. They fail, however, to identify any objectionable tasks or projects in particular. I have reviewed the unredacted invoices provided to the Court and find that defendants' claim of duplicative work is unsubstantiated.

■ Defendants next argue that Norwest should not be compensated for those fees that relate to unsuccessful claims, namely the Third, Fourth, Fifth, Sixth and Eighth causes of action. These causes of action relate to claims of improper competition and engaging in personal business during business hours. While defendants are right that Norwest should not be compensated for the fees it incurred in prosecuting these claims, it is not because of its lack of success on these claims. Rather, the reason these fees are non-compensable is because the claims arose out of the Director Agreements and not the Stock Purchase Agreement. This dichotomy, and the resulting disallowances, have already been considered. *See supra* Part II.A. On the other hand, Norwest must be

compensated for fees and costs incurred in its unsuccessful defense of defendants' first counterclaim. As this counterclaim arose out of the Stock Purchase Agreement, the corresponding fees are compensable whether or not Norwest prevailed.[5]

■ Defendants also object to DW & E's costs and the witness travel expenses as excessive. In particular, defendants note that the submitted invoices did not indicate a per-page charge for photocopying or telecopying services. *See* Opp. Mem. at 11. Defendants also object to the airfare and hotel expenses for counsel and plaintiff's witnesses, noting that the invoices do not indicate whether travel was first class and whether the hotels used were reasonably priced. *Id.* at 12. These objections are addressed by Dunn in his Reply Declaration. With regard to the per-page charge, Dunn stated that photocopying was charged at 25 cents per page and telecopying at $1 for the first page and 50 cents for each subsequent page. *See* Dunn Reply Declaration ¶ 4. Because this per page charge is excessive, I am reducing DW & E's total photocopying expenses of $44,455.95, *see* Opp. Mem. at 11, by fifty percent, resulting in a reduction of $22,228 before application of the "allowable percentage" determined in Part II.A. As to airfare, in all but two instances, business class was utilized for both counsel and witnesses. *Id.* ¶¶ 5, 6. While in Buenos Aires, counsel stayed at either the Hyatt or Marriott hotels while witnesses were lodged at the Kitano hotel in New York. *Id.* These hotels, while first class, are not considered luxurious. Accordingly, aside from the reduction for excessive photocopying costs, I decline to further reduce DW & E's claimed costs on the ground that they are excessive.

5. Defendants brought this counterclaim seeking reimbursement of the money they paid Finvercon in satisfaction of a tax judgment obtained by the Argentine tax authority. *See Norwest,* 86 F.Supp.2d at 232–33. I held that Norwest should reimburse defendants for any payments of penalties and interest flowing from the tax judgment but should not reimburse defendants for the amount of the tax judgment itself. *Id.* at 234. Because defendants were only partially successful on this counterclaim, and only to a very limited degree, it is not inequitable to hold defendants responsible for Norwest's attorneys' fees incurred in defending against this counterclaim.

Defendants also object to the entire $284,823.00 of CR & L's fees on the ground that CR & L represents Norwest in an Argentine labor proceeding and that the work billed by CR & L was in connection with that proceeding rather than the New York case. This objection is unfounded as the declaration of Joaquine Ibanez, a member of CR & L, specifically states that his firm separately accounted for its time and separately billed for its activity in connection with the Argentine labor case and the New York case. *See* Declaration of Joaquin Ibanez ¶ 2. I have already reduced CR & L's fees to account for work performed on non-compensable claims. *See supra* Part II.A. I will not reduce the CR & L fees further for any alleged mischarging.

 Lastly, defendants object to the amount of expenses incurred by Norwest itself. Of the $90,457 in total expenses, defendants object to $57,510.32 of Christopher Keiser's travel expenses. Christopher Keiser is plaintiff's in-house counsel who traveled to Argentina to help prepare witnesses and attend depositions. *See* Reply Declaration of David Dunn ¶ 3. While it may have been helpful that Keiser knew the witnesses and spoke Spanish, his presence in Argentina was not necessary given that plaintiff was represented by very experienced counsel. Therefore, none of Keiser's travel expenses are compensable. *See Luciano,* 109 F.3d at 117 (it is within the district court's discretion to determine whether actual time expended by an additional attorney was reasonable) (citations omitted).

The remainder of Norwest's expenses consist in large part of expert witness fees. As explained above, Norwest offered the testimony of two experts—Dr. Rubin Segal, who testified on a non-compensable subject, and Dr. Adolfo Atchabahain, who testified on a compensable subject. *See supra* Part II.A. Accordingly, the remainder of Norwest's costs will be reduced by fifty percent.

## III. CONCLUSION

For the reasons stated above, $884,879.33 is awarded to Norwest in attorneys' fees which consists of sixty-five percent (65%) of DW & E's combined fees and adjusted expenses, totaling $725,-994.49, and fifty percent (50%) of CR & L's fees, totaling $142,411.50, and fifty percent (50%) of the remainder of Norwest's costs, totaling $16,473.34.

SO ORDERED: