**Cedric S. ANDERSON, Jr. and Nigel Anderson, Plaintiffs,**

v.

**THE CITY OF NEW YORK; the New York City Police Department; Police Officer Andrew Carraro, shield # 2532; Police Officer Brendan Connolly, shield # 4497; and Unknown John Doe(s), all in their official and individual capacities, Defendants.**

No. 98CIV.1351(SHS).

United States District Court, S.D. New York.

Feb. 22, 2001.

Daniel Cherner, Law Offices of Daniel Cherner, New York City, Everett Hopkins, Springfield Gardens, NY, for Plaintiffs.

Isaac Klepfish, Michael D. Hess, Corporation Counsel of the City of NY, New York City, for Defendants.

## OPINION AND ORDER

STEIN, District Judge.

### I. INTRODUCTION

Plaintiffs Cedric S. Anderson, Jr. and Nigel Anderson brought this action pursuant to 42 U.S.C. § 1983 alleging violations of their Fourth Amendment rights by the defendant police officers and failure to train and supervise the officers by the City of New York, as well as related state law claims. Specifically, plaintiffs claim that the individual police officers used excessive force on them after pulling over their car without probable cause, illegally searched them and their car, and intentionally inflicted emotional distress on them.

The Court bifurcated trial against the individual defendants from trial against the City of New York pursuant to Fed. R.Civ.P. 42(b), and a trial of the claims against the individual defendants was held before a jury from February 7, 2000 to February 14, 2000. At the close of plaintiffs' case, the Court granted judgment as a matter of law against plaintiffs pursuant to Fed.R.Civ.P. 50(a) on their claim that their car had been illegally searched because plaintiffs had failed to adduce any evidence that the individual defendants were the officers who searched their car. The remaining constitutional and state law claims went to the jury, which returned a verdict for plaintiffs on the constitutional claims and for defendants on the intentional infliction of emotional distress claims. The jury awarded Cedric Anderson compensatory damages of $2,500, and Nigel Anderson nominal damages of one dollar. The jury did not award any punitive damages.

Plaintiffs now move for their attorneys' fees and costs pursuant to 42 U.S.C. § 1988. For the reasons set forth below, the motion is granted in part and denied in part.

### II. DISCUSSION

In a section 1983 action, the court has the discretion to award "reasonable" attorneys' fees and costs to "the prevailing party," 42 U.S.C. § 1988(b), and a "prevailing party" should ordinarily be awarded attorneys' fees unless "special circumstances" would render such an award unjust. *See Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, where a party obtains a purely "technical" victory, such as an award of only nominal damages on a secondary claim of a multi-claim case, attorneys' fees should usually not be awarded. *Farrar v. Hobby,* 506 U.S. 103, 114–

16, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *id.* at 117–18, 113 S.Ct. 566 (O'Connor, J., concurring); *Pino v. Locascio,* 101 F.3d 235, 239 (2d Cir.1996). In this case, defendants do not dispute that plaintiffs are "prevailing part[ies]" within the meaning of 42 U.S.C. § 1988(b). Instead, the police officers contend that plaintiffs' victory is so purely technical or "de minimis" as to preclude any award of attorneys' fees.

### A. *Plaintiffs' Victory Was Not Technical or "De Minimis"*

Correctly noting that the United States Supreme Court has written that, in fixing an award of attorneys' fees in a civil rights action, a district court "is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought," *Farrar,* 506 U.S. at 114, 113 S.Ct. 566, defendants contend that the award of $2,501 in this case is a mere technical victory when considered in light of a prayer for relief in plaintiffs' complaint totaling $66,000,000. However, regardless of the amount sought in the prayer for relief in the complaint, plaintiffs never asked the jury to award a specific amount at trial and the jury was never given a copy of the complaint. *Cf. Adams v. Rivera,* 13 F.Supp.2d 550, 553 n. 5 (S.D.N.Y.1998); *Pino,* 101 F.3d at 237.

Even assuming that plaintiffs' damages award should be compared to the full $66,000,000 sought in the complaint, plaintiffs' level of success in this case is markedly higher than that achieved by the plaintiffs in *Farrar* and *Pino,* relied on by defendants. In *Farrar,* the plaintiff sued six defendants alleging a conspiracy to deprive him of his civil rights; the jury found in his favor on only a single tangential claim against one of the six defendants. 506 U.S. at 105–07, 113 S.Ct. 566. Similarly, in *Pino,* the plaintiff brought three civil rights claims against two defendants and rejected a settlement offer of $75,000 plus $75,000 in attorneys' fees; the jury found

in her favor on only one claim against one defendant and awarded only one dollar in nominal damages in total. 101 F.3d at 236–37. In this case, plaintiffs prevailed against both of the individually named defendants on all of their civil rights claims except for one tangential claim, and there is nothing in the record to indicate that the Andersons ever rejected any offer greatly exceeding the amount they obtained at trial.

■ Plaintiffs' entitlement to fees is strengthened by consideration of the other factors set forth in Justice O'Connor's concurring opinion in *Farrar:* "the significance of the legal issue on which the plaintiff claims to have prevailed" and whether the litigation "accomplished some public goal." *See Farrar,* 506 U.S. at 121–22, 113 S.Ct. 566 (O'Connor, J., concurring).[1] In that opinion, Justice O'Connor found that the issue of liability—i.e., whether defendants violated plaintiffs' rights—is "significant." *Id.* She continued, however, that the "victory" achieved on this significant issue by the *Farrar* plaintiff was, at best, hollow, because he did not prevail on his conspiracy claim but instead "recover[ed] one dollar from the least culpable defendant." *Id.* As noted above, plaintiffs in this case prevailed against all of the individual defendants on their most significant constitutional claims—far from the "hollow" victory of the plaintiff in *Farrar.* Accordingly, plaintiffs prevailed on a significant legal issue in this case, which weighs in favor of the Court awarding attorneys' fees.

Although this case created no new rule of liability, *see Pino,* 101 F.3d at 239, it nonetheless served "some public goal." Even a modest award of damages in an excessive force case against police officers confers an "overall benefit to society," because "an individual damage action to redress instances of police misconduct is often the only tool reasonably available to

---

**1.** Justice O'Connor's criteria have received "wide recognition" in this and other circuits.

*See Adams,* 13 F.Supp.2d at 552 (collecting cases).

vindicate society's interest in ensuring that those who enforce the law also abide by it." *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir.1981). *But see Adams*, 13 F.Supp.2d at 553; *but cf. Haywood v. Koehler*, 885 F.Supp. 624, 629 (S.D.N.Y.1995).

In sum, plaintiffs are "prevailing parties," and their victory is not so "hollow," "technical," or "de minimis" as to preclude an award of attorneys' fees pursuant to 42 U.S.C. § 1988. Accordingly, the Court now turns to the computation of an appropriate award.

### B. *Calculation of Attorneys' Fees*

In this circuit, the starting point for determining a reasonable fee is the calculation of the lodestar amount—the product of the number of hours reasonably expended by counsel on the litigation times a reasonable hourly rate. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 424–25 (2d Cir.1999) (Title VII of the Civil Rights Act of 1964); *Lawson v. City of New York*, No. 99 Civ. 10393, 2000 WL 1617014, at *1 (S.D.N.Y. Oct. 27, 2000) (42 U.S.C. § 1983). In calculating the lodestar, the district court should exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino*, 166 F.3d at 425; *see also Hensley*, 461 U.S. at 433–35, 440, 103 S.Ct. 1933.

### 1. *Hourly Rate*

"A reasonable hourly rate is one 'in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation.'" *Knoeffler v. Town of Mamakating*, 126 F.Supp.2d 305, 310 (S.D.N.Y.2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Plaintiffs seek an hourly rate of $300 for lead attorney Daniel Cherner, a civil rights litigator with six years' experience, and an hourly rate of $250 for Everett Hopkins, an attorney with 10 years' litigation experience during 18 years of practice.

Although $300 per hour is "well within reason" for those with extensive experience, *see Knoeffler*, 126 F.Supp.2d. at 310–11 (collecting cases); *Ginsburg v. Valhalla Anesthesia Assocs.*, No. 96 Civ. 6462, 1998 WL 19997, at *3 (S.D.N.Y. Jan. 20, 1998), given Mr. Cherner's six years' in the well, the Court concludes that an hourly rate of $250 is appropriate in this action. *Cf. Lawson*, 2000 WL 1617014, at *4 (awarding $225 per hour to an attorney with "extensive litigation experience" who had not tried a section 1983 action before).

Based on the records before it and the Court's active supervision of the pretrial proceedings in this case, as well as presiding at the trial itself, the Court concludes that Cherner essentially prepared and tried this action alone and certainly handled the more difficult issues that arose. Accordingly, the Court finds that $200 per hour is appropriate for the time Mr. Hopkins expended during this case. *Cf., e.g., Knoeffler*, 126 F.Supp.2d. at 311–12; *Williams v. New York City Housing Authority*, 975 F.Supp. 317, 323 (S.D.N.Y. 1997).

### 2. *Number of Hours Spent*

Plaintiffs request a total of 390.75 hours for Cherner and 136.5 hours for Hopkins. Defendants do not dispute the reasonableness of the hours spent. Nevertheless, the Court has reviewed plaintiffs' submissions and finds the following adjustments appropriate.

#### a. *Travel time*

Plaintiffs claim travel time totaling 14 hours for Cherner and 21.5 hours for Hopkins. Travel time, however, is usually compensated at 50% of the hourly rate in this district. *See, e.g., Knoeffler*, 126 F.Supp.2d. at 313–14 (collecting cases). Accordingly, plaintiffs request will be reduced by 7 hours for Cherner and 10.75 hours for Hopkins.

### b. *Unsuccessful claims*

■ Plaintiffs were not successful on their claims for the search of their car or their intentional infliction of emotional distress claims. In addition, plaintiff Nigel Anderson was not successful in proving any but nominal damages on his constitutional claims. However, a reduction in the hours credited for work on these unsuccessful claims is not appropriate in this case because these unsuccessful claims were "inextricably intertwined" and "involve[d] a common core of facts" with Cedric Anderson's successful claim for excessive force. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir.1996) (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933).

■ In light of the jury's compensatory damage award to Cedric Anderson of $2,500, however, he was essentially unsuccessful in proving any long-term emotional damages, the sole issue on which there was expert testimony in this case. Accordingly, the Court finds that the hours identified in the records as involving expert discovery or testimony should be excluded from any compensable fees. The excluded hours for Cherner total 11.75 from the following dates: December 1, 1998 (3 hours); November 5, 1999 (.25 hours); January 17, 2000 (2 hours); January 25, 2000 (2 hours); January 31, 2000 (1.5 hours); February 6, 2000 (.5 hours); February 8, 2000 (2.5 hours). One hour, for January 17, 2000, is excluded from Hopkins's total.

### c. *Hopkins's trial time*

■ Given the minimal participation of Hopkins in the trial itself—primarily assisting Cherner with exhibits—the Court will award only $75 per hour for the 21.5 hours of Hopkins's time billed for trial from February 7, 2000, to February 14, 2000, as well as for the four hours of compensable travel time (half of the eight hours requested) for those dates. *Cf. Bridges v. Eastman Kodak Co.*, No. 91 Civ. 7985, 1996 WL 47304, at *8 (S.D.N.Y. Feb. 6, 1996), *cf. also, e.g., Marisol A. v. Giuliani*, 111 F.Supp.2d 381, 388 (S.D.N.Y. 2000); *Soberman v. Groff Studios Corp.*, No. 99 Civ. 1005, 2000 WL 1010288, at *4–*5 (S.D.N.Y. July 21, 2000).

### d. *Cherner's clerical tasks*

■ The Court will award $50 per hour for the 1.75 hours spent by Cherner on filing the summons and complaint and serving various defendants (February 24, 1998; February 26, 1998; March 7, 1998) plus 1.25 hours of compensable travel time, since these are clerical tasks. *See Lawson*, 2000 WL 1617014, at *2; *Pascuiti v. New York Yankees*, 108 F.Supp.2d. 258, 267 (S.D.N.Y.2000).

### e. *Depositions on municipal liability issues*

The Court excludes a total of 11.5 hours plus .5 hours of compensable travel time spent by Cherner and four hours plus 1.25 hours of compensable travel time spent by Hopkins on the depositions of Gasteaboro and Gorman. These depositions were taken pursuant to an order of the Court on issues related to municipal liability, which has yet to be resolved.

### f. *Post-verdict time*

Plaintiffs' fee request includes 42 hours for Cherner and nine hours for Hopkins for time spent subsequent to the jury verdict. Except for time spent substantiating and preparing plaintiffs' request for fees, however, there is no indication that any of this time relates to the individual defendants, rather than the (as yet unresolved) claim against the City of New York. Accordingly, of the post-verdict time, the Court will credit only the 15 hours spent by Cherner and the one hour spent by Hopkins on tasks related to the request for fees.

### 3. *Total Lodestar*

Taking into account the adjustments discussed above, the appropriate loadstar cal-

culation is as follows: 330 hours for Cherner at $250 per hour ($82,500), 3 hours for Cherner at $50 per hour ($150), 86 hours for Hopkins at $200 per hour ($17,200), and 25.5 hours for Hopkins at $75 per hour ($1,912.50), for a total of $101,762.50.

### 4. Adjustment to the Loadstar

■■■ There is a strong presumption that the lodestar figure represents the "reasonable" fee, even when that figure is disproportional to the amount of damages obtained by the successful plaintiff. *Grant v. Martinez,* 973 F.2d 96, 101–02 (2d Cir. 1992); *Bridges,* 1996 WL 47304, at *12. Nevertheless, a court must still determine whether the plaintiff's level of success is so low as to warrant a reduction in the fee award, *Grant,* 973 F.2d at 101, or so "exceptional" as to warrant an enhancement, *see Hensley,* 461 U.S. at 435, 103 S.Ct. 1933; *see also Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Although, as discussed above, plaintiffs' success was not so low as to preclude an award of attorneys' fees, their success was limited. In the Pretrial Order, plaintiffs stated that they sought damages not only for "pain and suffering from the excessive use of force itself," but also "for short-term and long-term physical injuries, for emotional distress and psychological/psychiatric damages, for medical expenses and for lost wages." It is abundantly clear that most of these categories of damages were rejected by the jury.

■■■ Except for the exclusion of time related to expert witnesses, however, this lack of success is not reflected in the lodestar figure. Although not every failure to prevail on an issue or claim should lead to a reduction in the lodestar, *see, e.g., Knoeffler,* 126 F.Supp.2d. at 319–20, in this case a substantial adjustment is warranted. A significant portion of the trial was devoted to testimony and cross examination on issues related to damages, which were decided by the jury largely in the defendants' favor. Accordingly, the Court finds that an adjustment to the lodestar of 40% is appropriate to reflect plaintiffs' limited success. Plaintiffs will be awarded attorneys' fees in the amount of $61,057.50.

### C. Calculation of Costs

Plaintiffs seek an award of costs totaling $39,220.93.

The Court of Appeals for the Second Circuit has held that an award of attorneys' fees pursuant to 42 U.S.C. § 1988 should include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998). Thus, "costs" pursuant to a section 1988 award include not only those costs ordinarily taxable pursuant to 28 U.S.C. § 1920, as implemented by Fed. R.Civ.P. 54(d)(1) and Local Rule 54.1, but also those reasonable costs that are ordinarily charged to clients in the legal marketplace. *See Kuzma v. Internal Revenue Serv.,* 821 F.2d 930, 933 (2d Cir.1987) (Pursuant to 42 U.S.C. § 1988, "courts generally award reimbursement for costs in excess to those enumerated in § 1920 by including attorney's disbursements, which are generally billed to clients in addition to the hourly rate, as part of an award of attorney's fees."); *cf. Lawson,* 2000 WL 1617014, at *5. *But cf. Marisol A.,* 111 F.Supp.2d at 401–02. With this principle in mind, the Court turns to each category of plaintiffs' requested costs.

### 1. Service, Filing, and Witness Fees

Plaintiffs request a total of $300 for service, filing, and witness fees. The fees requested are reasonable and ordinarily recoverable as costs pursuant to 28 U.S.C. § 1920 and Local Rule 54.1(c)(3), (10). Accordingly, they are awarded in full.

### 2. Photocopies

Plaintiffs request a total of $1370.50 for 5482 copies at $ 0.25 per page. Defendants argue that the amount requested is excessive and that pursuant to Local Rule

54.1(c)(5), plaintiffs should be awarded only those costs for copies where "the original was not available and the copy was used or received in evidence."

In this circuit, expenses for photocopies have been expressly identified as "ordinarily charged to clients" and therefore recoverable pursuant to 42 U.S.C. § 1988. *See LeBlanc–Sternberg,* 143 F.3d at 763; *Marisol A.,* 111 F.Supp.2d at 401; *cf. Lawson,* 2000 WL 1617014, at *5. Plaintiffs have identified the documents copied, and the total of 5482 pages is not excessive in the context of this case. A per page rate of $ 0.25, however, is excessive and warrants a minimum of a 50% reduction in the amount requested. *See, e.g., Norwest Financial, Inc. v. Fernandez,* 121 F.Supp.2d 258, 263 (S.D.N.Y.2000); *Rodriguez v. McLoughlin,* 84 F.Supp.2d 417, 426 (S.D.N.Y.1999). Accordingly, plaintiffs are awarded $685.25 for photocopying costs.

### 3. *Expert Costs*

Plaintiffs seek a total of $9.578 in expenses related to expert witnesses, including $4,482 in expenses for the treatment of Cedric Anderson by a psychologist. In opposing that request, the police officers rely on Local Rule 54.1(c)(3), which provides that fees for expert witnesses exceeding those paid to lay witnesses are not recoverable unless prior court approval is obtained. They also point out that the jury did not award damages for the full extent of the emotional damages testified to by plaintiffs' expert.

In this case, no award of costs for experts is appropriate. As discussed above, Cedric Anderson was essentially unsuccessful in proving any long-term emotional damages, the sole issue on which there was expert testimony in this case. Just as attorneys' time spent on matters related to expert witnesses has been excluded from the lodestar, so too expenses related to experts will be excluded from the award of costs.

### 4. *Deposition Costs*

The Andersons seek a total of $5,843.50 for the cost of deposition transcripts. The police officers contend that Local Rule 54.1(c)(2) permits recovery only for those depositions actually used are trial. However, Local Rule 54.1(c)(2) does not expressly limit recovery of costs for deposition transcripts to those used at trial. It provides that certain depositions—those used at trial or on dispositive substantive motions—are taxable, while certain others—those taken "solely for discovery" are not. *Id.*

Moreover, 28 U.S.C. § 1920 provides that the cost of a "transcript necessarily obtained for use in the case" may be taxed. *See United States Football League v. National Football League,* 704 F.Supp. 474, 487 (S.D.N.Y.1989). Thus, deposition transcripts need not be introduced into evidence at trial in order to be taxed as costs; "it suffices that at the time the deposition was taken it was reasonably expected that the transcript would be used for trial preparation." *United States Media Corp. v. Edde Entertainment, Inc.,* No. 94 Civ. 4849, 1999 WL 498216, at *9 (S.D.N.Y. July 14, 1999); *Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 891 (5th Cir. 1993). In other words, the proper inquiry is whether, at the time the deposition was taken, it "appeared to be reasonably necessary." *Electronic Specialty Co. v. Int'l Controls Corp.,* 47 F.R.D. 158, 162 (S.D.N.Y.1969); *see also United States Media Corp.,* 1999 WL 498216, at *9; *United States Football League,* 704 F.Supp. at 487. *Contra Ciraolo v. City of New York,* No. 97 Civ. 8208, 2000 WL 1521180, at *4 (S.D.N.Y. Oct. 13, 2000).

With these principles in mind, the Court finds that the transcripts of deponents Carraro, Connolly, Dreiss, Russo, Vargas, Doyle, Montera, Lubowsky, Colon, Carroll, and Cascio were "necessarily obtained for use at trial." Carraro, Connolly, Dreiss, and Russo all testified at the trial and the others were present when officers Carrao

and Connolly used excessive force on Cedric and Nigel Anderson. Costs for these depositions total $4,231.10. The Court also awards costs of $255 for stenographer's fees incurred by plaintiffs for depositions that were canceled due to defense counsel's failure to appear.

The Court excludes from the award of costs, however, expenses incurred for the depositions of Gasteaboro, Gorman, and Nasser. Gasteaboro and Gorman were deposed pursuant to an order of the Court on issues related to municipal liability, which has not yet been resolved. Nasser was the defendants' expert, and those costs are excluded for the reasons previously discussed regarding experts.

### 5. Research Costs

Plaintiffs seek a total of $1,950.20 in costs for computerized legal research. Plaintiffs contend that such costs are not taxable.

 Although defendants are correct that costs for computerized research are not taxable pursuant to 28 U.S.C. § 1920, in this circuit they are considered part of attorneys' fees, because, in theory, an attorney will complete a research assignment faster with the aid of computerized databases than without such aides. *See, e.g., United States v. Merritt–Meridian Constr. Corp.,* 95 F.3d 153, 173 (2d Cir. 1996); *Lawson,* 2000 WL 1617014, at *5. Accordingly, the Court will award the costs of computerized research.

For the reasons discussed above, however, an adjustment of the amount requested is appropriate to account for plaintiffs' failure to prevail on most of their claims for damages. Plaintiffs have not identified the issues researched with particularity, so it is not possible for the Court to exclude only those costs associated with issues on which they did not prevail. Accordingly, the Court will apply a 40% reduction to account for plaintiffs' limited success, and award $1,170.12 in attorneys' fees for computerized research costs.

### 6. Medical Expenses

 Plaintiffs seek a total of $23,530.17 in medical expenses incurred by Cedric Anderson. These expenses are properly the subject of claims for damages, not costs. Plaintiffs may not relitigate their damage claims in the guise of a motion for costs.

### 7. Materials and Notary Costs

Plaintiffs seek a total of $108.96 for notary expenses and the purchase of specified materials used at trial. Defendants contend that these expenses are "overhead" and not taxable.

 These expenses constitute "identifiable, out-of-pocket disbursements" related to the litigation rather than "nonrecoverable routine office overhead." *See Kuzma,* 821 F.2d at 933–34; *cf. LeBlanc–Sternberg,* 143 F.3d at 763. Accordingly, they are recoverable in full pursuant to 42 U.S.C. § 1988. *See LeBlanc–Sternberg,* 143 F.3d at 763.

### 8. Total Costs

In sum, the Court will award plaintiffs costs and attorneys' fees for recoverable expenses reasonably incurred in the prosecution of this action as follows: $300 for service, filing and witness fees; $685.25 for photocopies; $4,486.10 for deposition transcripts; $1,170.12 for computerized research; and $108.96 for materials and notary costs, for a total of $6,750.43.

## III. CONCLUSION

For the reasons set forth above, the Court grants plaintiffs' motion for costs and attorneys' fees in the amount of $67,807.93.

SO ORDERED: