**Ray GREEN, Plaintiff,**

v.

**Eric TORRES, et.al., Defendants.**

**No. 98 Civ. 8700(JSR).**

United States District Court,
S.D. New York.

Nov. 13, 2003.

---

Robert L. Herbst, Herbst & Greenwald, LLP, New York, NY, for plaintiff.

## MEMORANDUM ORDER

RAKOFF, District Judge.

This case was remanded by the Court of Appeals, *see Green v. Torres*, 59 Fed. Appx. 400 (2d Cir.2003), for reconsideration of this Court's prior ruling awarding plaintiff's counsel only 50% of his "lodestar" counsel fees. In particular, the Court of Appeals requested further findings and clarification as to the specific bases for the reduction. *Id.* at 403.

The problem presented by the instant fee application is whether and how to take account, in determining fee awards under the civil rights laws, of inflated claims pursued by plaintiff to the eve of trial and then summarily dropped. The problem is a recurrent one, yet perhaps one not definitively addressed by prior precedents.[1]

Plaintiff has been represented throughout this case by very able and experienced counsel, more than justifying the otherwise expensive billing rate of $400/hour that the Court approved for calculating his lodestar hours. *See Green v. Torres*, 2000 WL 922174, *1 (S.D.N.Y.2003). Even discounting for the benefit of hindsight, it seems not unlikely that counsel of such acumen and experience early realized that (as the jury ultimately found) the core of this case concerned whether defendant Torres acted precipitously and pretextually in arresting plaintiff, in the lobby of the building in which plaintiff resided, on charges of trespass, possession of marijuana, and possession of an open container of beer. Yet plaintiff's pleadings, far from focusing on the incidents genuinely at issue, sought to enlarge the case beyond reasonable bounds by alleging no fewer than nine causes of action against five police officers and wholesale claims against the entirety of the police force. Thus, both the Complaint (filed December 8, 1998) and the Amended Complaint (filed, following substantial discovery, on April 9, 1999),[2] alleged not only the four claims that plaintiff eventually submitted for trial (only two of which prevailed, and then only as to one police officer and, vicariously, the City), but also five other, major claims that plaintiff ultimately abandoned. These included claims that the defendants conspired in violation of 42 U.S.C. §§ 1983 and 1985 to violate various constitutional rights such as free speech and free association, used excessive force, inflicted emotional distress, committed *prima facie* tort under New York law, and, most expansively, executed

a de facto policy or custom of the defendant CITY OF NEW YORK, implemented by police officers of the defendant, 1) to punish summarily persons who appear not to be responsive to police directions or who appear to chal-

---

1. The only case of which this Court is aware that directly alludes to the issue is *Reed v. A.W. Lawrence & Co., Inc.,* 889 F.Supp. 594 (N.D.N.Y.1995), *aff'd,* 95 F.3d 1170 (2d Cir. 1996), but the discussion there is cursory and the facts distinguishable.

2. The Complaint and the Amended Complaint are essentially identical except for the specification in the latter of the names of the individual police officer defendants.

lenge police authority ...; 2) to file false charges, fabricate the basis for an arrest, approve false charges and falsify official records in order to cover up police misconduct knowing or having reason to know that the charges are false and unsupportable; 3) to use unnecessary force and brutality in order to show who is boss; and 4) to cover up any illegal or other improper conduct committed by another police officer in accordance with the custom not to "blow the whistle" on a fellow officer....

Complaint, ¶ 18 (the *"Monell"* claim).[3]

Whether these five claims, which occupy at least a third of the Complaint, were the product of over-zealous fervor or simply an effort to maximize recovery, no material evidence warranting such claims was ever presented to the Court.[4] But the seeming absence of any basis for bringing such claims did not deter plaintiff from maintaining them until approximately one week before trial, when all five of these claims—as well as all claims whatever against two of the five police officers—were "voluntarily" dismissed by plaintiff.

The fact that such over-pleading is endemic in certain civil rights cases does not mean that Congress intended to reward it in the form of recovery of attorneys fees. On the contrary, this Court is of the view that the abandonment or dismissal of inflated claims is an appropriate factor to be taken into account in determining "degree of success" (the touchstone of awarding fees in civil rights cases, *see Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

This is not to say, however, that taking such account easily fits within the methods for determining degree of success set forth in prior judicial precedents. Under those precedents, while degree of success is relevant both to calculating lodestar and to assessing overall level of success, *see Green v. Torres*, 59 Fed. Appx. at 402, hours spent on unsuccessful claims may be subtracted from the lodestar calculation only if they relate to "severable claims" that involve neither a "common core of facts" nor "related legal theories." *Id.* Since *Monell* claims and such typically involve, in part, extrapolations from the narrower claims at issue, it is difficult to view them as wholly severable. Moreover, whatever severability might exist in theory, it is almost impossible in practice for a district court to determine from time sheets what portion of, say, a large document request related solely to the *Monell* claims, or what portion of, say, a lengthy deposition was devoted to questions bearing only on the *Monell* issues. To ask district courts to make a meaningful evaluation of severability in such circumstances is to ask them to conduct elaborate evidentiary hearings on fee awards, which hardly seems a prudent use of judicial resources.

In the instant case, plaintiff now admits in his latest submission to the Court, *see* Plaintiff's Memorandum of Law On Remand In Support Of Restoring The 50% Reduction of the Lodestar, that he "expended no time pursuing [the First Amendment] claims," *id.* at 5, and that "no time was spent on [the § 1985 conspiracy claim]", *id.* These admissions, quite damning in their own way (—why were the claims pleaded at all if plaintiff did not intend to pursue them?—), may mean that these claims formed no part of the lodestar; but does that mean that their failure

---

**3.** *See Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**4.** All discovery and other preliminary proceedings in this case were handled by the District Court, rather than being referred to a Magistrate Judge.

is to be disregarded in evaluating degree of success?

As for the other claims that plaintiff voluntarily dismissed, plaintiff concedes that they were actively, if unsuccessfully, pursued in discovery, *id.* at 5–7, but argues that they either involved the same core of facts as the successful claims or were sufficiently related in legal theory to the successful claims to be irrelevant to evaluating degree of success, *id.* Thus, as to the *Monell* claim, plaintiff argues that "[a]ll of the discovery requests that defendants cite [as related to the *Monell* claim] would have been made even if plaintiff had never alleged a *Monell* claim," *id.* at 6, because they also relate to other issues in the case, such as "the propriety of the individual defendants' treatment of the plaintiff," *id.* This may be true; or, at least, the possibility that it may be true renders it difficult, if not impossible, for the Court to exclude as "unrelated" to the two successful claims virtually any of the hours spent by plaintiff's counsel in pre-trial discovery. But this only serves to demonstrate the inadequacy of looking solely to the lodestar calculation to reflect degree of success.

Yet once this calculation is made, "there is a strong presumption that the resulting lodestar figure represents a reasonable fee," *Green v. Torres,* 59 Fed. Appx. at 402, and reductions therefrom on the basis of degree of success have largely been limited to situations involving recovery of only nominal damages and the like. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 117, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Adams v. Rivera,* 13 F.Supp.2d 550, 553 (S.D.N.Y.1998); *see also Orchano v. Advanced Recovery,* 107 F.3d 94, 98 (2d Cir. 1997). In the present case, however, while it may be true that the only claims that

were ever likely to prevail were those against Detective Torres for false arrest and abuse of process, those claims were real and the recovery of $50,000 in compensatory damages and $8,508 in punitive damages,[5] while far less than plaintiff sought, could hardly be called nominal.

But all that this really shows, in the Court's view, is that the prevailing precedents do not fully address the situation that here confronts the Court: the situation where the plaintiff, having pleaded an overbroad case that he has no realistic expectation of ultimately proving (but the assertion of which may give him some tactical benefit), seeks to measure his degree of success only in terms of the much narrower claims on which he ultimately prevailed. Here, plaintiff's counsel, by his pleadings, made the proverbial mountain out of a molehill and maintained that posture until, with trial imminent, it no longer served its tactical purposes. Does the fact that the molehill for which he ultimately obtained relief for his client is "inextricably intertwined" with the mountain of claims that he pleaded mean that he is entitled to a mountain's worth of legal fees? Should not this Court, in assessing what fees plaintiff's counsel is fairly entitled to, measure his degree of success, at least in part, by how little he proved of what he alleged he would prove? *Cf. Hensley v. Eckerhart,* 461 U.S. at 440, 103 S.Ct. 1933 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole").

Having said all this, the Court recognizes that there is a public interest in monitoring even modest police transgressions; that plaintiff's counsel's assiduous efforts in carrying this case to a successful

---

**5.** As the defendants note, the figure of $8,508 corresponds exactly to the amount of special damages alleged by plaintiff: $7,308 in lost wages; $450 in psychiatric treatment; and $750 in attorney's fees for defending plaintiff against the criminal charges.

conclusion for his client therefore serves a public purpose; and that Congress clearly intended the fee-shifting provisions of the civil rights acts to encourage zealous representation even in cases that might not yield large recoveries for the originating party. *See generally Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir.1999). Moreover, at oral argument on remand, plaintiff's counsel forcefully and eloquently reminded the Court of the difficulties any plaintiff's counsel faces in proving police misconduct. Accordingly, on "reconsideration," *see Green v. Torres*, 59 Fed. Appx. at 401, the Court, for these latter reasons, will reduce the lodestar by only 20% instead of the prior 50%. Thus, the lodestar, calculated at $261,685.00, *see Green v. Torres*, 59 Fed.Appx. at 403, is hereby reduced to $209,348.00, to which is added $16,334.16 in expenses, *id.*, for a total of $225,682.16, plus 9% per annum simple interest thereon to run from April 27, 2000.

In accordance with the direction of the Court of Appeals, any party seeking appellate review of this Memorandum Order shall so inform the Clerk of the Court of Appeals within 30 days hereof, upon which the matter will automatically be restored to the jurisdiction of the Court of Appeals and referred to the original panel. *See Green v. Torres*, 59 Fed. Appx. at 403. In the absence of any such notice, this Memorandum Order shall, at the expiration of 30 days herefrom, become final and unappealable.

SO ORDERED.