**YURMAN DESIGNS, INC., Plaintiff,**

v.

**PAJ, INC., d/b/a Prime Art Jewel, Defendant.**

No. 98 Civ. 8697 RWS.

United States District Court, S.D. New York.

Dec. 13, 2000.

Pryor Cashman Sherman & Flynn, New York City, by Maxim H. Waldbaum, Lori D. Greendorfer, of counsel, for Plaintiff.

Cobrin & Gittes, New York City, by Peter T. Cobrin, Oren J. Warshavsky, Clyde A. Shuman, of counsel, for Defendant.

### OPINION

SWEET, District Judge.

Plaintiff Yurman Design, Inc. ("Yurman") has moved for an award of attorneys' fees and costs against defendant PAJ, Inc., d/b/a Prime Art & Jewel ("PAJ") pursuant to the judgment in this action. For the reasons set forth below, an award of fees in the amount of $221,561.70, less $10,000 to compensate for the challenged entries, and $22,757.03 in costs will be granted.

As is often regrettably the case, the sequelae of litigation is as difficult and painful to all concerned as the action in chief. This is one such occasion and made more so because counsel for PAJ was retained only after judgment was rendered on behalf of Yurman. Notwithstanding, the resolution of the current issue between the parties has been substantially aided by the skill of all counsel.

### Prior Proceedings

This action was commenced by Yurman on December 8, 1998, and immediately went into high gear. PAJ sought removal to the United States District Court for the Northern District of Texas where it had filed a complaint (the "Texas Action"), and after it was determined that the action

would be tried in New York, vigorous motion practice resulted including preliminary injunction and discovery disputes.

After a seven-day jury trial held from October 18 to November 1, 1999, judgment was entered on June 1, 2000, granting Yurman relief on its claims for copyright and trade dress infringement against PAJ, all post-trial motions having been resolved by an Opinion and Order of April 10, 2000. Based upon a finding of willful infringement of Yurman's copyrighted jewelry designs, the judgment provided for an award of Yurman's attorneys' fees and costs pursuant to Section 505 of the Copyright Act, 17 U.S.C. § 505.

Yurman moved for attorneys' fees and costs it incurred in connection with the prosecution of its copyright claims for the period from November 1, 1998 (the month in which Yurman commenced its investigation of defendant's infringing activities, resulting in the preparation and transmittal of a cease and desist letter to defendant on November 8, 1998) to May 30, 2000, in the total amount of $825,430.39, attributing $742,303.00 to fees and $83,127.39 to costs. Discovery was had in connection with the application, and the motion was heard and marked fully submitted on November 20, 2000.

### Facts

The following facts are found based upon the submissions of the parties and hard-won familiarity with the litigation. Both sides have submitted evidence by affidavit and deposition, and neither has requested an evidentiary hearing. The nature of the factual issues presented are particularly suited to the resolution as set forth below.

More than 700 billing entries and charges have been submitted in support of the application, the great majority of which are not specifically attributable to Yurman's copyright claim. Only 37 billing entries and charges specifically refer to the copyright claim, and attribute 12.50 hours to partners, 161.95 to associates and 5.75 hours to paralegals. According to PAJ's expert, the fees actually billed to Yurman for entries expressly attributable to the copyright claims are $37,403.63.

A number of the billing entries and charges for December 1998 through January 1999, relate to a declaratory judgment action brought by PAJ in Texas. According to PAJ, billing attributable to the Texas declaratory judgment action include: partners, 17.25 hours; associates 65.50 hours and paralegals 21.50 hours.

In its submission, Yurman asserts that it did not include any fee specifically attributable to non-copyright claims, and that it attributed fifty percent of all charges from September 8, 1999 to November 1, 1999, to the copyright claim, as well as seventy-five percent of all charges from November 1, 1999 to December 1, 1999. As to costs, all were attributed to the copyright claim other than costs incurred for purposes of trial preparation and trial, i.e., for the period September 8, 1999 to November 1, 1999. For this latter time period, Yurman attributed fifty percent of its costs to its copyright claim.

Three of the forty-nine findings of fact proposed by Yurman related to the copyright claim. Four of the PAJ pieces were found to infringe Yurman's copyrights and trade dress and twenty pieces were found to infringe the trade dress.

Yurman was billed $1,107,808.50 in fees and $113,785.17 in costs which included the fees and expenses attributable to the Texas Action.

Yurman's application for fees is calculated on average billing rates of $520.69 per hour for partners, $278.50 per hour for associates, and $162.35 per hour for paralegals/non-lawyers, the charged partner rate being the "customary rate," of Maxim H. Waldbaum ("Waldbaum") the partner in charge of the litigation. The charged associate rate is based upon the 1999 National Law Journal Survey of the rates employed by the nation's 250 largest firms,

including firms located outside the Southern District of New York.

With respect to the few New York City firms listed, the average firm size is 365 attorneys, with the smallest firm (Battle Fowler, L.L.P.) at 169 attorneys and the largest (Skadden, Arps, Slate, Meagher & Flom, L.L.P.) at 1,403 attorneys. The remaining listed New York City firms vary from 207 to 300 attorneys, averaging 272 attorneys. Pryor Cashman Sherman & Flynn has 130 attorneys.

The Report of Economic Survey 1999, issued by the American Intellectual Property Law Association ("AIPLA") reports hourly rates for attorneys in the New York City area of $360.00 for partner hours and $240.00 for associates. Both rates represent the 75th percentile rates in the survey.[1]

Yurman has calculated its hourly rate for paralegals in New York City to be $162.35. The 1999 Compensation and Benefits Survey of the National Federation of Paralegal Associations ("NFPA") contains a listed billing rate range of $90.00 which, when multiplied by the ratio of the average New York base salary ($48,277) to the average base salary nationally ($38,085) (1.2676), produces an average hourly billing rate for paralegals in New York of $114.08.

### The Issues Presented

The determination of the appropriate amount of fees and expenses is complicated here because of the interrelationship of the copyright and trade claims, the existence of the Texas Action, and the issue of willfulness. The dispute between the parties also includes challenges to specific time entries and the prevailing rate for partners, associates, and paralegals.

These are all subjects which could be dealt with in exquisite detail, but the methodology adopted will be of a more general nature.

### The Allocation Of The Time Expended

According to PAJ's accounting evidence, the time entries specifically referencing "copyright" amount to a fee calculation of $37,403.63. Yet such a narrow interpretation ignores the reality of this litigation. Neither the discovery nor the pretrial motions can be viewed as unrelated to the copyright case whether or not so specified. The specific entries made in the daily course of hard fought litigation cannot be expected to parse the proportion of time spent with respect to each of the issues involved. To analyze each entry in such a fashion would be impractical and probably impossible.

■ The recognition that litigation, and its necessary economic concomitant, billing, is more of an art than a science, requires a less precise but more equitable analysis. Taken on the whole, the most significant portion of the case from Yurman's point of view was the trade dress and unfair competition claims. The copyright case was relatively straight forward, classic and simple. The trade dress issues were novel and much more difficult. The ratio of success, four copyright infringements to twenty trade dress claims, does rough justice to the allocation of effort.

■ The time and effort spent in resolving the jurisdictional issues and the effect of the Texas Action was essential to the resolution of the claims in this Court. Contrary to PAJ's contention, that effort was appropriately included in the fee and expense calculations.

Without redoing the calculations of fees charged Yurman on a monthly basis, it is difficult to determine one precise basis for the submitted request which allocated varying percentages over different time periods. In addition, the requested $742,303.00 was also derived according to Waldbaum by deducting fifty percent of the procedural work done from December 1998 to February 3, 1999, "to reflect the discount of such fees given to Yurman."

1. Yurman admits it did not use the AIPLA rates in its fee application.

Waldbaum's "methodologies" arrived at a claim for fees in the amount of $742,303.00 and costs of $83,127.39 as compared to the amounts alleged to have been billed, fees of $1,107,808.50 and costs of $113,785.17.

While counsel for Yurman has assigned a percentage of time attributable to the copyright claim ranging from fifty percent to seventy-five percent, PAJ will concede only the three percent of billing specifying copyright, but suggests that ten percent is an appropriate percentage attributable to copyright if the overall time calculations are used.

Because "the cable look," i.e., the trade dress, was the principal emphasis of Yurman in terms of discovery, time spent and commercial impact, an overall twenty percent allocation of fees and expenses actually charged is properly attributable to the copyright claim.

### The Propriety Of The Time Expended

Only one serious attack is made on the propriety of the time billed. Exhibit 10 to the affidavit of Clyde Shuman, sworn to August 4, 2000 ("Shuman Affid.") purports to list clerical work done at paralegal or attorney rates, paralegal work billed at attorneys rates, entries so redacted as to be unattributable, charges for costs for a deposition for which costs were denied, duplicate entries, and entries not otherwise recoverable. Footnote 19 of the Yurman Memorandum in Further Support of Plaintiff's Application for Attorneys Fees and Costs seeks to rebut the criticism of these entries. Although the items are not described, the value of the items claimed by PAJ to be unnecessary entries is not calculated by PAJ. PAJ calculated the challenged entries to constitute 5 hours of partner time, 112.25 hours of associates time, and 38 hours of paralegal time, for a total at Yurman's rates of $40,034.38. Assessing both charges and countercharges with respect to specific entries, a reduction of $10,000 is appropriate. No other attack is made on the accuracy of the time charge entries.

### The Reasonableness Of The Rates Charged

■ Approximately twenty of the firms in the Shuman Affidavit reflect rates of approximately $500 for partners and substantial rates for associates. Courts have held that sophisticated mid-sized New York City law firms involved in an intellectual property case can charge rates comparable to large or specialty New York City law firms, given the complex nature of intellectual property law. *See Howes v. Medical Components, Inc.,* 761 F.Supp. 1193, 1195–96 (E.D.Pa.1990) (evaluating reasonable hourly rates in patent infringement case and finding that Fish and Neave, an [at that time] 102 attorney firm, reasonably could charge rates comparable to Sherman and Sterling, a large firm, explaining that many of Fish and Neave's cases "are comparable in size and complexity to cases handled by ... much larger New York City law firms").

The AIPLA survey for the appropriate hourly rate for a New York City intellectual property attorney has also been used. *See Celebrity Serv. Int'l Inc. v. Celebrity World Inc.,* 9 U.S.P.Q.2d 1673, 1687 (S.D.N.Y.1988). However, these rates need not be applied. Indeed, there are decisions within this circuit finding rates above the AIPLA rates to be reasonable. *See Yamanouchi Pharmaceutical Co. v. Danbury Pharmacal, Inc.,* 51 F.Supp.2d 302, 305 (S.D.N.Y.1999) (finding that rates listed in 1996 and 1998 surveys, nearly double those rates mentioned in the AIPLA guidelines "were ball-park reasonable for New York City"), *dismissed on other grounds,* 230 F.3d 1377 (Fed.Cir.2000); *see also Howes,* 761 F.Supp. at 1196–97 (finding Fish and Neave's rates reasonable despite fact that they were higher than the highest rate listed in the AIPLA survey). In addition, the AIPLA survey results indicate that less than ten percent of the 1,058 attorneys surveyed responded to the inquiry concerning hourly rates for New York City partners and associates.

58

The rates charged by Waldbaum are $520.69 an hour while associate time was billed at $278.50 an hour. These rates are "commensurate with the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Aris Isotoner, Inc. v. Dong Jin Trading Co.,* 17 U.S.P.Q.2d 1017, 1024 (S.D.N.Y.1989) (internal quotation marks and citation omitted); *see Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electricite,* 970 F.Supp. 348, 351 (S.D.N.Y.1997) (finding reasonable partner rates of $150 per hour in securities litigation); *see generally United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir.1989) (noting that paralegal and other non-lawyer time is properly included in fee award because such amounts are included in, and the award is meant to compensate, the "work product of an attorney") (citation omitted); *A Firm–By–Firm Sampling of Billing Rates Nationwide,* 22 Nat'l L.J. B12 (Dec. 27, 1999) (indicating rates for Battle Fowler, a mid-sized New York firm, at $325–$500 for partners and $150–$325 for associates, and similar rates for Loeb & Loeb, a New York entertainment law firm).

Finally, the rates sought by this application are the rates charged the client. Yurman is a sophisticated and significant participant in the jewelry business. Its acceptance of the rates charged is in itself substantial evidence of their reasonableness.

### Conclusion

Therefore, the application for fees attributable to the copyright cause of action is granted at twenty percent of the amount billed to Yurman, namely, $221,561.70, less $10,000 in light of the challenged entries. Costs will be similarly calculated to be $22,757.03.

It is so ordered.