**BLEECKER CHARLES COMPANY,**
**Plaintiff,**

v.

**350 BLEECKER STREET APART-**
**MENT CORPORATION, De-**
**fendant,**

v.

**Bleecker Parking Corp., Additional**
**Counterclaim Defendant.**

**No. 00 CIV. 7827(GEL).**

United States District Court,
S.D. New York.

April 10, 2002.

**227**

Dale A. Schreiber, Allison B. Feld, Proskauer Rose LLP, New York, NY, for Plaintiff Bleecker Charles Company.

Robert N. Fass, Friedman, Krauss & Zlotolow, New York, NY, for Defendant 350 Bleecker Street Apartment Corporation.

## OPINION AND ORDER

LYNCH, District Judge.

In this declaratory judgment action under the Condominium and Cooperative Conversion Protection and Abuse Relief Act, 15 U.S.C. §§ 3601–3616 ("the Act"), the Court awarded summary judgment for plaintiff, the sponsor of a co-operative conversion project ("the Sponsor"), against defendant, the co-operative corporation that now owns the building ("the Co-op"), holding that an effort by the Co-op to terminate a favorable lease issued to the Sponsor was ineffective, because it was undertaken after the end of the two-year period during which the Act permits such terminations. *Bleecker Charles Co. v. 350 Bleecker St. Apt. Corp.*, 181 F.Supp.2d 257, 267 (S.D.N.Y.2001). The key issue in dispute was the date when the number of units owned by the Sponsor fell below 25% of the total units in the building, since the two-year "window" under the Act opened on that date. *Id.* at 259.

Plaintiff now moves for the award of attorneys' fees, as permitted by the Act, 15 U.S.C. § 3611(d), and for an injunction prohibiting the Co-op from passing along any portion of the fee award to the Sponsor in its capacity as shareholder in the Co-op. After requests for extensions of time by both parties, the motion is finally fully submitted and ripe for decision. The motion for attorneys' fees will be granted, and the requested injunction denied.

## DISCUSSION

### I. *Attorneys' Fees*

■ It is common ground between the parties that the Sponsor, as a prevailing plaintiff in litigation under the Act, is entitled to recover the costs of the litigation, including "reasonable attorneys' fees ... and court costs." 15 U.S.C. § 3611(d). *See 305 E. 24th Owners Corp. v. Parman Co.*, 994 F.2d 94, 96 (2d. Cir.1993); Pl. Mem. at 1; Def. Opp'n Mem. at 3. It is also agreed that the fee to be awarded is to be determined by the "lodestar method." (Pl. Mem. at 9; Def. Opp. Mem. at 3.)[1] This approach begins by multiplying "the number of hours reasonably expended on the litigation" by the prevailing party's attorneys by a "reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. *See also F.H. Krear & Co. v. Nineteen*

*Named Trustees*, 810 F.2d 1250, 1263 (2d Cir.1987). The reasonableness of the hourly fee claimed is determined by the prevailing market rate charged for similar work by attorneys of like skill in the same geographic area. *Cohen v. West Haven Bd. of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir.1980). The lodestar amount can be adjusted by considering a variety of other factors,[2] but it is the "most useful starting point" in determining a reasonable fee. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933.

■ The Sponsor seeks the award of approximately $345,000 in fees.[3] The Co-op argues that the fees sought by the Sponsor are excessive. The Sponsor has extensively documented the attorney time spent on litigation, and defendant does not contest that these hours were actually expended. Rather, the Co-op argues that

---

**1.** The parties agree that the lodestar test as established in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), is applicable to the award of fees in this action. (Pl. Mem. at 9; Def. Opp. Mem. at 3.) Although *Hensley* concerned a fee award under 42 U.S.C. § 1988, the Supreme Court noted that the "standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 & n. 7, 103 S.Ct. 1933. Courts have applied the *Hensley* method to a variety of fee-shifting statutes, including the statute applicable in this action. *See, e.g., Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir.1998) (awarding fees under the Age Discrimination in Employment Act); *Darnet Realty Assocs. v. 136 E. 56th St. Owners, Inc.*, 96 Civ. 5825(LBS), 1999 WL 269960, at *6 (S.D.N.Y. May 5, 1999), *aff'd*, 214 F.3d 79, 86–88 (2d Cir.2000) (awarding fees under 15 U.S.C. § 3611(d)). Since the parties agree that the *Hensley* method applies and since no authority suggests that the application of the method varies depending on the particular fee-shifting statute at issue, this opinion will refer to fee-shifting cases using the lodestar method without noting the specific statute they involved.

**2.** "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n. 3, 103 S.Ct. 1933.

**3.** This represents $338,097.43 in fees and disbursements for plaintiff's counsel in litigating the case, and accounting fees and charges of $6,418.75 for Hayes & Company, who helped the Sponsor with "various accounting and tax issues related to the possible settlement of this dispute." (Pl. Mem. at 2.) The attorneys' fees include $33,437.57 incurred in preparing the fee application itself. Such fee application expenses are compensable under fee-shifting statutes. *See, e.g., Immigration and Naturalization Serv. v. Jean*, 496 U.S. 154, 161–62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir.1999); *Darnet Realty*, 1999 WL 269960, at *6, *aff'd*, 214 F.3d 79, 86–88.

the total amount of the fees should be reduced, arguing primarily that the overall fee is in excess of what has been awarded in prior cases under the Act (Def. Opp'n Mem. at 4–5), the issues were insufficiently complex to require the amount of time expended by the Sponsor's lawyers (*id.* at 6–7), and the lawyers' hourly rates are excessive (*id.* at 7). None of these arguments has merit.

First, the Co-op cites other cases arising under the Act in which the fees awarded were lower than those sought by the Sponsor in this case. *See 305 E. 24th Owners Corp. v. Parman Co.*, 799 F.Supp. 353, 359–60 (S.D.N.Y.1992) (approximately $253,000); *Darnet Realty*, 96 CIV. 5825(LBS), 1999 WL 269960, at *6–*7 (awards of approximately $78,000 and $99,000 to two different prevailing parties). But such a comparison is of limited value, and the cases cited are easily distinguishable.

*305 E. 24th Owners* was litigated from 1985 to 1992, and the fees awarded there were based on the appropriate market rates for attorneys as much as 17 years ago; they therefore have limited relevance to the issue before the Court today. In *Darnet Realty,* Judge Sand drastically reduced the fees sought by one of the prevailing parties because of the Court's "determination that the instant actions have been litigated in a wasteful and excessively litigious manner," and because "Darnet never argued to this Court the principle on which it ultimately prevailed." 1999 WL 269960, at *6. *See also id.*, at *3 ("It was not until the Second Circuit raised the issue and requested supplemental briefing that Darnet first contended that the Notices were premature. We find that the fact Darnet prevailed on an argument that

it did not make until the eleventh hour at the Court's suggestion yet requests fees for all of its work, is a factor in our assessment of the reasonableness of the fees Darnet requests"). These factors are not remotely relevant to this case, in which there is no suggestion of excessive litigiousness, and the Sponsor prevailed on the primary theory it argued from the beginning of the litigation. Accordingly, the appropriateness of the fees sought must be determined by looking at the reasonableness of the time spent and rates charged in this case, not by artificial extrapolation of the fees awarded in entirely separate litigation.

Second, the Co-op's contention that the issues involved in the case did not justify extensive work on the part of the Sponsor's counsel borders on the frivolous. The case involved extensive summary judgment motion papers and briefing by both sides, and resulted in a 17–page opinion by the Court involving careful legal and factual analysis. Moreover, the briefing addressed a number of alternative arguments of both parties that were appropriately analyzed by the parties, but that did not need to be addressed in the Court's opinion because of the conclusions reached on the matters that were decided.[4] It ill behooves the Co-op to minimize the complexity and difficulty of what it now suggests was a simple case for the Sponsor, when it vigorously contested the Sponsor's arguments in this litigation, and indeed, continues to press a contrary view on appeal. The Co-op " 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [its adversary] in response' ". *City of Riverside v. Rivera,* 477 U.S. 561, 580 n. 11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (quoting *Copeland v. Marshall,* 641 F.2d 880, 904 (D.C.Cir.1980) (en banc)).[5] Upon review of

**4.** Indeed, the Co-op's mere listing of these allegedly simple, non-research-intensive matters consumes a page of single-spaced commentary citing numerous cases, some of them reported only in the New York Law Journal. (Def. Opp'n Mem. at 6.)

**5.** The Co-op's argument that "there is no justification for the large number of hours spent

the billing records submitted by the Sponsor's attorneys, and the analysis of those records prepared by the Co-op's expert, the Court concludes that the Sponsor has carried its burden of showing that the time expended on the matter by its attorneys was well within the bounds of the reasonable.

Third, the Co-op contends that "the hourly rate[s] charged by Sponsor's counsel substantially exceeds the prevailing rates charged by attorneys in this district having comparable skill and experience in real estate and Abuse Relief Act litigation." (Def. Opp'n Mem. at 7.) As the Sponsor points out, courts in this District have frequently awarded comparable rates to firms of comparable size and reputation. *See, e.g., Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co.*, 137 F.Supp.2d 351, 358 (S.D.N.Y.2001); *Yurman Designs, Inc. v. PAJ, Inc.*, 125 F.Supp.2d 54, 57 (S.D.N.Y.2000), *aff'd,* 2002 WL 200242 (2d Cir. Feb.8, 2002) (unpublished summary order); *Broome,* 17 F.Supp.2d at 237–38; *Lowrance v. Coughlin,* 88 Civ. 3343(LBS), 1995 WL 103277, at *1–*2 (S.D.N.Y. March 8, 1995). In awarding attorneys' fees, the Court's task is not to decide whether the hourly rates charged by firms that pay their least productive, least able first-year lawyers as much as federal district judges (and vastly more than firefighters or schoolteachers, though vastly less than the New York Knicks' third-string point guard) are "justified" in the grand order of the cosmos,

but only whether they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Judged by this market standard, the Sponsor has more than sufficiently demonstrated that the rates charged by its counsel are "reasonable."

In assessing the reasonableness both of the hourly rates and of the time spent, the Court is cognizant of the fact that the fees sought here are not hypothetical amounts prepared only for purposes of a fee application. Rather, they are embodied in invoices prepared as the litigation progressed, and actually paid by the Sponsor, a sophisticated client familiar with the real estate and legal markets in New York. The Sponsor could not have been assured that it would be awarded fees at the end of the litigation; rather, in the event of a loss or a settlement, it would have had to bear those fees unreimbursed. As numerous courts have recognized, negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market. *Harris Trust,* 137 F.Supp.2d at 358 ("reasonableness ... demonstrated by the fact that the [client] actually paid the fees as they were incurred"); *Yurman Designs,* 125 F.Supp.2d at 58 ("acceptance of the rates charged is in itself substantial evidence of their reasonableness"). Certainly, the Sponsor could have found cheaper lawyers, but it

---

on research and writing" (Def. Opp'n Mem. at 7), and its labored attack on the use of more than one lawyer to write and edit briefs (Brill Aff. ¶¶ 30–32), mistake professionalism that resulted in high-quality advocacy for duplicative effort. Having more than one attorney " 'research and participate in drafting a brief is a common practice and therefore not necessarily duplicative.' " *Broome v. Biondi,* 17 F.Supp.2d 230, 235 (S.D.N.Y.1997) (quoting *Equal Employment Opportunity Comm'n v.*

*Local 638, Sheet Metal Worker's Int'l Ass'n,* 71 Civ. 2877(RLC), 1991 WL 278917, at * 2 (S.D.N.Y. Dec. 18, 1991)). "[M]any tasks require or benefit from the attention of more than one attorney." *Id.; see also Harb v. Gallagher,* 131 F.R.D. 381, 387 (S.D.N.Y. 1990) (reviewing and editing an associate's research and drafting is "not a duplication of effort ... but, rather, a way to prepare a case in an efficient manner").

was not required to do so. The Sponsor chose *these* lawyers, agreed to be responsible for their fees, and paid them, without regard to whether the fees would be recovered at the end of the case.

Finally, the Court notes that it was impressed with not only with the quality of the briefing on both sides of the case, but also with the sophisticated approach to the litigation taken by the parties, which ultimately saved considerable litigation costs for both sides. The parties agreed to a lengthy and complex stipulation of facts, obviating the need for trial, simplifying discovery, and greatly simplifying the motion practice. This stipulation furthered the Court's work and expedited the litigation considerably. While this process was, compared to trial, expeditious and efficient, it clearly required considerable work of investigation, negotiation and drafting. This approach, then, reduced the overall cost of the litigation, and the fact that there was no trial should not obscure the fact that extensive factual investigation and preparation was performed. At any rate, to the extent that the quality of the

work performed and the nature of the results obtained must be taken into account in determining whether the lodestar amount should be modified, the Court concludes that these factors amply support the appropriateness of the lodestar fees requested in this case, as the quality of the work of the Sponsor's lawyers was excellent and the result was a complete victory.

Accordingly, the Court finds that the Sponsor has carried its burden of establishing the reasonableness of the fees sought under the prevailing lodestar approach, and rejects the Co-op's arguments that the fee should be reduced.[6]

## II. *Injunction*

■ In the normal course of business, the Co-op would presumably treat the attorneys' fee award as a business expense, to be borne by its shareholders in the form of higher maintenance fees or a special assessment. Without pointing to any provision of the Act that authorizes such injunctive relief—indeed, without citation to any authority whatsoever—the Sponsor asks the Court to enjoin the Co-op from

---

**6.** The Co-op challenges one expense item charged by the Sponsor's counsel, arguing that the fee award should exclude amounts charged for computer research. (Def. Opp'n Mem. at 7–8.) Once again, with all due respect to those courts who have taken a contrary view, *see, e.g., BD v. DeBuono,* 177 F.Supp.2d 201, 209 (S.D.N.Y.2001), the Court's task is not to decide whether such expenses "should," in some ideal world or in the Court's own opinion, be treated as part of the attorney's overhead and built into the fees charged. Rather, the question is whether such fees are properly considered among "those reasonable out-of pocket expenses incurred by attorneys and *ordinarily charged to their clients.*" *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989) (emphasis added) (citation omitted). The Second Circuit has suggested, at least in dictum, that computer research costs are indeed separately reimbursable in an attorneys' fee award. *LeBlanc–Sternberg v.*

*Fletcher,* 143 F.3d 748, 763 (2d Cir.1998); *United States ex rel. Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 173 (2d Cir.1996). While some lawyers treat the cost of computerized research as part of overhead, others, including many firms comparable to the Sponsor's counsel, pass these expenses on to clients as separately chargeable disbursements. *See, e.g.,* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 379 (1993) (stating in a discussion of billing for professional fees, disbursement and other expenses that the "lawyer may recoup expenses reasonably incurred ... for services performed in-house, such as ... computer research ... so long as the charge reasonably reflects the lawyer's actual cost for the services rendered"). The client here accepted these charges and paid them as billed, further evidencing that these charges are ordinarily billed to clients in the relevant market.

passing any portion of the attorney's fee award to the Sponsor, arguing that failure to grant such an injunction "would partially defeat the fee-shifting provision adopted by Congress." (Pl. Mem. at 14.) The Court declines this innovative invitation.

The Sponsor is not only the original sponsor of the co-operative conversion, and the holder of the advantageous lease on the commercial and garage premises that were the subject of this lawsuit; it is also a shareholder in the co-operative, through its continued ownership of a significant number of apartments in the building. Thus, the Sponsor in certain respects stands both to gain and to lose from the outcome of this litigation. Although the Sponsor, qua lessee of the contested space, has presumably profited from the retention of its lease, qua shareholder in the Co-op, it forgoes its share of the benefits (in the form of reduced maintenance fees on the apartments it owns) that might have accrued to the Co-op had it won the litigation and been able to secure a higher rent for the commercial space. Similarly, the Sponsor, in its capacity as shareholder, will presumably suffer along with the other shareholders from any judgment entered against the Co-op. Of course, the Co-op's decision to engage in this dispute was undertaken against the will and over the objections of the Sponsor, but no legal authority supports apportioning the costs of corporate litigation only to those shareholders who agreed with the decision to pursue it.

The Co-op cites various sources of New York law for the proposition that corporations, including co-operatives, may not discriminate among shareholders of the same class with regard to their financial rights, see N.Y. BCL § 501(c); *Schwartz v. Marien*, 37 N.Y.2d 487, 492, 373 N.Y.S.2d 122, 335 N.E.2d 334 (1975); *Wapnick v. Seven Park Ave. Corp.*, 240 A.D.2d 245, 658 N.Y.S.2d 604, 605–606 (1st Dept.1997), and

that, as a matter of state law, a co-operative shareholder must pay its share of litigation expenses, even where the shareholder was the prevailing adverse party, *3060 Ocean Ave. Owners, Inc. v. Bistricer*, 247 A.D.2d 275, 667 N.Y.S.2d 909, 909 (1st Dept.1998). The Sponsor replies that these authorities should be disregarded under the Supremacy Clause to the extent they are inconsistent with the fee-shifting provisions of federal law. (Pl. Reply Mem. at 9.)

There is no inconsistency, however. The Sponsor prevailed in its capacity as sponsor and lessee, but it will bear its share of the litigation costs in its capacity as shareholder in the Co-op. The Sponsor cites no authority, and the Court is aware of none, suggesting that a corporate shareholder's dividends should be exempted from the impact on the corporation's profits of a judgment obtained by that shareholder in litigation against the corporation under a statute permitting fee-shifting. If the Sponsor had lost this suit and been assessed for the Co-op's attorneys' fees because the Court determined that its suit was "frivolous, malicious, or lacking in substantial merit," *see* 15 U.S.C. § 3611(d), the Sponsor would not properly be charged higher maintenance than other apartment owners to keep it from sharing in the rewards of the Co-op's litigation success. Nor should it pay lower rates than other shareholders because it prevailed.

Thus, assuming arguendo that the Act under some circumstances might permit injunctive relief adjunct to its fee-shifting provisions, and disavowing any suggestion that New York law could deny the Court any power granted by the federal Act, the Court concludes that the injunction sought by the Sponsor would not do equity between the parties or further the goals of the Act, and declines to grant it.

## CONCLUSION

Accordingly, for the reasons stated above, the Sponsor's motion for the award of attorneys' fees and expenses is granted in full, and its motion for injunctive relief is denied. Judgment will be entered for the plaintiff in the amount of $344,516.18.

SO ORDERED.