**AUDEMARS PIGUET HOLDING S.A.,**
**Audemars Piguet (North America)**
**Inc., Plaintiffs,**

v.

**SWISS WATCH INTERNATIONAL,**
**INC. d/b/a Swiss Legend d/b/a SWI**
**Group; ILS Holdings, LLC d/b/a worldofwatches.com, and Lior Ben–Shmuel, Defendants.**

No. 12 Civ. 5423(LAP).

United States District Court,
S.D. New York.

Signed Aug. 20, 2014.

Milton Springut, Tal S. Benschar, Springut Law P.C., New York, NY, for Plaintiffs.

David H. Bernstein, Elliot Greenfield, Debevoise & Plimpton, LLP, Avram Solomon Turkel, James Barnett Sheinbaum, Borstein & Sheinbaum, New York, NY, Amaury Cruz, Amaury Cruz & Associates, Miami Beach, FL, Lisa N. Neal, Rutan & Tucker LLP, Costa Mesa, CA, for Defendants.

## OPINION, ORDER, AND JUDGMENT

LORETTA A. PRESKA, Chief Judge:

Before the Court is Audemars Piguet Holding S.A. ("APSA") and Audemars Piguet's (North America) Inc. ("APNA") (collectively "Plaintiffs") application for additional treble profits and for attorney's fees and costs, pursuant to 15 U.S.C. § 1117(b) and Judge Harold Baer, Jr.'s January 6, 2014 Opinion and Order, and Defendants Swiss Watch International Inc. ("SWI"), ILS Holdings, and Lior Ben–Shmuel's (collectively "Defendants") Response. For the following reasons, Plaintiffs' application is GRANTED in part and DENIED in part.

## I. BACKGROUND

Following a four-day bench trial, Judge Harold Baer, Jr. issued Findings of Fact and Conclusions of Law, pursuant to Fed. R. Civ. Pro. 52(a)(1). Dckt. No 165; *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, 46 F.Supp.3d 255, 2014 WL 47465 (S.D.N.Y. Jan. 6, 2014) ("*Audemars*"). The Court presumes familiarity with that opinion and incorporates the prior analysis and determinations by reference. Therein, the Court found that Defendants acted in bad faith and willfully infringed on Plaintiffs' trade dress and that Plaintiffs were entitled to an accounting of profits, treble damages and attorney's fees, pursuant to 15 U.S.C. § 1117(b). *Id.* at 280–81, 288–89, 291–94, at *12, *20, *23–26.

## II. DISCUSSION

### A. *Pretrial Damages (Prior to April 30, 2013)*

Notwithstanding, Judge Baer's direction to brief damages after April 30, 2013, *see id.* at 294, at *26, Defendants have produced voluminous records, amounting to over 1,300 pages, concerning damages before April 30, 2013. However, Defendants failed to provide this evidence during discovery or at trial and will not be permitted to retry this case on posttrial briefing. Indeed, Defendants provide no explanation as to why they did not present this evidence at the appropriate time, i.e., during discovery and at trial. Defendants do not argue, nor could they, that they were not aware at trial that Plaintiffs intended to seek an accounting of profits, pursuant to 15 U.S.C. § 1117(a)-(b). Under this statute, it is the defendant who is responsible to "prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). *See also GTFM, Inc. v. Solid Clothing, Inc.,* 215 F.Supp.2d 273, 304 (S.D.N.Y.2002) (" 'This sequence of proof ... places the burden of proving costs on the party with the superior access to such information, namely the infringing defendant.' ") (quoting *Am. Honda Motor Co., Inc. v. Two Wheel Corp.,* 918 F.2d 1060, 1063 (2d Cir.1990)). At trial, Defendants failed to produce adequate evidence to prove their overhead expenses or direct costs for the pretrial period, except with respect to watches, which the Court credited. *Audemars,* 46 F.Supp.3d at 292–93, 2014 WL 47465 at *24.

Even if Defendants had presented new evidence of pretrial costs, it would be inappropriate for the Court to reconsider its trial findings: "a trial court should be most reluctant to set aside that which it has previously decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice." *LiButti v. United States,* 178 F.3d 114, 118 (2d Cir.1999) (citing *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). Although the Court has not yet entered judgment, the Court had reached a decision and was prepared to enter judgment but for the form of the injunction. Defendants have not identified "a mistake of fact or clear error of law" for which the prior ruling of the Court ought be disturbed. *See LiButti,* 178 F.3d at 118.

### B. *Posttrial Damages (Subsequent to May 1, 2013)*

With respect to damages within the scope of this motion, i.e., damages after May 1, 2013, the Court will consider new evidence submitted by Defendants because these costs were neither known nor contemplated at trial. Plaintiffs' argument that Defendants' failure to recover for certain categories of costs for the pretrial period precludes recovery in those categories for the posttrial period is unpersuasive. While it is true that Defendants failed to provide adequate information at trial for the pretrial period, *see* Tr. 303; *Audemars,* 46 F.Supp.3d at 292–93, 2014 WL 47465 at *24, this failure does not preclude Defendants from submitting proper documentation for costs for the posttrial period. Indeed, it would be inappropriate to limit recovery for a period that was not even considered at trial. In keeping with Judge Baer's opinion and the law in this circuit, the Court will apply the legal standard set out in 15 U.S.C. § 1117(a) to Defendants' costs and deductions for the posttrial period. *See Audemars,* 46 F.Supp.3d at 291–93, 2014 WL 47465 at *23–*24. For overhead expenses, the Court will conduct the required two-step process. *Audemars,* 46 F.Supp.3d at 292 n. 4, 2014 WL 47465 at *23 n. 4, quoting *Fendi Adele S.R.L. v. Burlington*

*Coat Factory Warehouse Corp.*, 642 F.Supp.2d 276, 290 (S.D.N.Y.2009).

### 1. *Sales Revenue*

For the posttrial period, Defendants' total revenue on infringing Trimix products was $574,268. Declaration of Sergio Rodicio, January 21, 2014; Dckt. No. 175 ("Rodicio Jan. Decl.") ¶¶ 34, 35; Ex. 1 ($569,104 from 5/1/13 through 12/31/13 and $5,164 from 1/1/14 through 1/15/14).

### 2. *Direct Costs*

"In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Here, the posttrial account period began on May 1, 2013 and extended until February 11, 2014. Defendants sold 6,878 infringing Trimix watches during that period. Rodicio Jan. Decl. Ex. 1 (6,813 from 5/1/13 through 12/31/13 and 65 from 1/1/14 through 1/15/14).

#### a. *Watches*

Plaintiffs do not dispute the direct cost of watches at $25.69 per unit, based upon the summaries of invoices admitted into evidence at trial. Pl.'s Mem. at 4. Thus, the Court will allow this cost.[1] At $25.69 per unit for 6,878 units, the total cost is $176,695.82.

#### b. *Movements*

Although Defendants seek the costs of watch movements, their supporting exhibits differentiate neither by the time period for which movements were used nor by the specific watches in which movements were used, i.e., infringing Trimix watches as opposed to other watches manufactured by Defendants. *See* Rodicio Jan. Decl.; Exs. 7, 8 & 9.[2] Defendants submit a conclusory chart, *see* Declaration of Sergio Rodicio, February 18, 2014; Dckt. No. 180 ("Rodicio Feb. Decl."), Ex. 33, and an explanation of a rather convoluted calculation, *see id.* ¶¶ 33–37. However, they have failed to demonstrate that these movements were used only for Trimix watches, and only during the posttrial period which the Court now considers. *See* Rodicio Jan. Decl. Exs. 7, 8 and 9. Although the Court does recognize that movement costs contribute to the direct costs of watches, Defendants have not provided sufficient evidence to establish *which* movements were used in posttrial Trimix watches, out of the thousands of watches for which Defendants submit invoices. *See id.* As such, the Court will attribute only the average cost of the lowest cost movements, which is $4.01. *See* Rodicio Jan. Decl. Ex. 9. Thus, the Court will credit Defendants the cost of $4.01 for each of the 6,878 watches sold for the posttrial period, for a total movement cost of $27,580.78.

#### c. *Boxes and Custom Duties*

Defendants have produced invoices and receipts demonstrating that the cost of boxes was $1.30 each, with a customs fee of 17.6%, for a total cost of $1.53 per box. *See* Rodicio Jan. Decl. ¶¶ 20, 21, 22, Exs. 15, 16. Plaintiffs do not dispute this figure. Thus, Defendants will be credited $1.53 for each box, for a total of $10,523.34.

---

[1] Defendants attempt to demonstrate good faith by suggesting that a lower cost may in fact be accurate. Def. Opp'n Mem. at 4. However, here again, Defendants put forth conclusory calculations but fail to provide the underlying documentation. *See* Rodicio Decl. ¶ 37, Ex. 33.

[2] Exhibits 7, 8 and 9 included thousands of movements beyond the 6,878 watches under consideration for the posttrial period but provides no framework through which to ascertain which movements were used in Trimix watches beyond Defendants' own conclusory charts and analysis.

#### d. *Amazon Rebate Charge*

Defendants produced a receipt from Amazon showing sales of $51,191.91 during the posttrial period and indicating a 2.5% rebate for a total of $1,279.80. *See* Rodicio Feb. Decl., Ex. 49. Thus, Defendants will be credited with this cost.

### 3. *Overhead Costs*

 The determination of overhead costs requires a two-step process:

"The court must first 'determine what overhead expense categories ... are actually implicated by the production of the infringing product', a process that requires a determination whether there is 'a sufficient nexus ... between a category of overhead and the production or sale of the infringing product.' ... The second step is to determine 'a fair, accurate, and practical method of allocating the implicated overhead to the infringement.' The infringer has the burden of offering such a formula, which the court is to assess for reasonableness, a determination that requires a case-by-case factual assessment."

*Fendi,* 642 F.Supp.2d at 290 (quoting *Hamil Am. Inc. v. GFI,* 193 F.3d 92, 105 (2d Cir.1999)). Further, where, as here the Court has determined that the infringer acted willfully, "the court must apply the *Sheldon* [*v. Metro–Goldwyn Pictures Corp.,* 106 F.2d 45, 54 (2d Cir.1939), *aff'd,* 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940)] analysis of claimed cost set-offs 'with particular rigor,' a term that requires the court to 'give extra scrutiny to the categories of overhead expenses claimed by the infringer to insure that each category is directly and validly connected to the sale and production of the infringing product.'" *Fendi,* 642 F.Supp.2d at 291 (quoting *Hamil,* 193 F.3d at 107).[3]

#### a. *Nexus between Cost Categories and Trimix Watches*

For the posttrial period, Defendants have provided a list of fifty-four categories of overhead expenses and short descriptions of how those costs contributed to the manufacture and sale of the infringing Trimix watches. *See* Rodicio Jan. Decl. ¶ 25. With respect to the first step of analysis, i.e., the "strong nexus" between the claimed cost and the infringing products, Defendants have met their burden in some of the categories. *See Fendi,* 642 F.Supp.2d at 290.

Defendants have failed to demonstrate a strong nexus in the following categories. "Sales Discounts" (category (h)) would be accounted for in total revenue and need not be duplicated here.[4] Defendants explain that "Professional Fees" (category (hh)) includes "services provided for SWI's websites." *See* Rodicio Jan. Decl. ¶ 25(hh). However, Defendants have included payments to its own website, worldofwatches.com. *See* Rodicio Jan. Decl. Ex. 19. Although generally the Court will not "scrutinize for inclusion or exclusion particular items within the overhead category," *Fendi,* 642 F.Supp.2d at 290 (internal quotation omitted), here where Defendants appear to be inappropriately including payments to an internal branch of its company in an otherwise acceptable category,

---

**3.** At trial, Defendants did not provide sufficient information for either step, thus the Court did not deduct overhead costs for the pretrial period. *See Audemars,* 46 F.Supp.3d at 292–93, 2014 WL 47465 at *24; *see also* Tr. 301–03:11–13 (Mr. Rodicio was asked "And you haven't produced any breakdown as to the different kinds of indirect costs the company has expensed?" and responded "Correct. You did not request that of me.")

**4.** Further, Exhibit 17 does not provide sufficient information to understand what discounts may or may not have been reflected in overall costs.

those self-directed payments will be excluded. Defendants address Plaintiffs' concern that "Commissions—Market Places" (category (tt)) is duplicative of the direct cost of the Amazon Rebate and demonstrate that these costs are distinct. *See* Rodicio Feb. Decl. ¶ 14(b).

Defendants include "Wages" (category (uu)) in overhead expenses and claim that an attached exhibit "show[s] how [Defendants' CFO] accounted for this expense, which involved prorating the general ledger wages and expenses to show the breakdown as what appears in SWI's payroll journals by department." *See* Rodicio Jan. Decl. ¶ uu, Ex. 21. However, the exhibit itself is unclear with respect to the time period covered and opaque with respect to the calculation itself. Without more information, it is not possible to establish the requisite nexus, and deduction for this category must not be permitted.[5]

Although various marketing expenses are accounted for in four distinct categories—(*l*) Marketing Expenses/Company-owned sites; (m) Marketing Trade Show; (u) Marketing—WOW TV; (ee) Marketing ("direct marketing expenditures primarily paid to Amazon.com")—these categories do not appear to be duplicative and will be permitted.

The Court is satisfied that Defendants have demonstrated a sufficiently strong nexus for the remainder of the claimed overhead costs. *See* Rodicio Jan. Decl. ¶ 25(a)-(bbb). Here, Defendants' company is devoted entirely to the manufacturing, marketing and sale of watches, and, as in *Sheldon*, "the infringing [product] was one of [many] made by the defendants, using the same supervising staff and organization, which had to be maintained if the business was to go on at all." *Sheldon*,

106 F.2d at 54. This is a more apt analogy than *Fendi* where the infringing defendant utilized a more diverse business model and provided much less detail with respect to the relationship between overhead costs and the infringing products. *See Fendi*, 642 F.Supp.2d at 292–93. Even applying the "particular rigor" called for because Defendants willfully infringed, the nexus between the cost and the infringing products is clear. *See Hamil*, 193 F.3d at 107. Save those excluded above, the Court is satisfied that each of Defendants' claimed overhead expenses are related to the "production and sale of the Trimix watches at issue." *See* Rodicio Jan. Decl. ¶ 25.

### b. *Allocation of Costs to Trimix*

██ The next step requires "determin[ing] 'a fair, accurate, and practical method of allocating the implicated overhead to the infringement.' The infringer has the burden of offering such a formula, which the court is to assess for reasonableness, a determination that requires a case-by-case factual assessment." *Fendi*, 642 F.Supp.2d at 290 (quoting *Hamil*, 193 F.3d at 105). Defendants claim an allocation of overhead costs based on a multi-step calculation. *See* Rodicio Jan. Decl. ¶¶ 26–34. Defendants' Chief Financial Officer, Sergio Rodicio ("Rodicio") first sets out the various sales channels through which costs may be allocated. *Id.* ¶ 28. He then explains that some overhead expenses need to be allocated based on their use in a particular channel. *Id.* For example, "website marketing expenses are allocated only to the B2C channel," which are "SWI sales through SWI's company-owned websites." *Id.* ¶ 29. Rodicio also notes that "some of the payroll expenses were allocated based on particular departmental func-

---

5. The Court notes, by way of example, that Ex. 21 appears to account for "2013" but there is no way to ascertain what part of 2013 or how the Court would identify the costs for the posttrial period only.

tions" and explains "[o]nce I allocated the claimed overhead costs amongst the sale channels ... (Ex. 22), I transferred these numbers to the Final Cost Allocation spreadsheet category 'Total Overhead per channel' (Ex. 1)." *Id.* ¶¶ 29, 30. However, it is in this transition that Defendants' analysis fails: Mr. Rodicio states that he has allocated certain costs per channel but, beyond two examples, provides no further explanation of how these costs have been allocated. Indeed, even for those areas, Mr. Rodicio does not show how he made these allocations or the underlying logic behind them. This is a vital step of the calculation, and transparency is required with respect to how it was made. This is particularly significant where, as here, Defendants were found to have acted in bad faith, *Audemars,* 46 F.Supp.3d at 280–81, 2014 WL 47465 at *12, and "all presumptions are drawn against the infringer," *See Fendi,* 642 F.Supp.2d at 291 (quoting *Hamil,* 193 F.3d at 107). The Court will not accept this opaque analysis. Thus, Defendants have failed at the second step of the analysis, and thus overhead costs may not be deducted.

Because the Court will not deduct overhead costs, the total profits for the infringing period are the gross revenue ($574,268) less the direct costs (watches: $176,695.82; movements: $27,580.78; boxes and custom duties: $10,523.34; Amazon rebate charge: $1,279.80) yielding a total profit of $358,188.26. Because Judge Baer found Defendants acted willfully, the profits will be trebled, for a total of $1,075,564.78.

### C. Attorney's Fees and Costs

Plaintiffs seek attorney's fees and costs as a prevailing party under the Lanham Act. *See* 15 U.S.C. § 1117(a).

#### 1. Attorney's Fees

Plaintiffs' affidavit and exhibits in support of attorney's fees satisfy the require-ments for such applications in this circuit. *See* Declaration of Milton Springut, February 3, 2014 ("Springut Decl.") ¶¶ 2–5; Exs. A, B, C; *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). In addition, all of these fees, save those incurred over the last several months, have already been reviewed and approved by Plaintiffs. *See* Springut Decl. ¶ 5. "As numerous courts have recognized, negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market." *Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.,* 212 F.Supp.2d 226, 230 (S.D.N.Y.2002) (internal citation omitted). Further, Defendants do not oppose Plaintiffs' application for legal fees and do not dispute any of Plaintiffs' counsel's particular fee or hour allocations. *See* Def.'s Opp'n Mem. 22–25. Because Plaintiffs' application for attorneys fees is unopposed and complies with the requirements in this circuit, the Court will grant Plaintiffs' application for attorneys fees of $811,237.50.

#### 2. Costs

##### a. Filing Fees and Service Fees

These fees are provided for the S.D.N.Y. Local Rule 54.1(c)(10) and are not disputed by Defendants. Thus, $480 will be taxed, consisting for a $350 filing fee and a $130 service fee.

##### b. Deposition Transcripts

"Unless otherwise ordered by the Court, the original transcript of a deposition, plus one copy, is taxable if the deposition was used or received in evidence at the trial, whether or not it was read in its entirety." S.D.N.Y. Local Rule 54(c)(2). Because each of the deponents for whom the Plaintiffs request transcript costs testified at trial, save for one who was on Defendants' trial witness list though was not called at trial, these depositions were "reasonably

necessary," and Plaintiffs should be compensated for their costs. *See Licensing Co. LLC v. Meyer Mktg. Co., Ltd.*, 2009 WL 5173787, \*5 (S.D.N.Y. Dec. 30, 2009) *aff'd*, 428 Fed.Appx. 97 (2d Cir.2011) ("[I]t is now well-established that a deponent's testimony at trial alone is sufficient to end the inquiry as to whether their depositions were 'used' at the trial." (internal quotation and citation omitted)). For the sole witness who did not testify at trial, Jasmine Bacpic, "the proper inquiry is, whether, at the time the deposition was taken, it appeared to be reasonably necessary" for trial preparations. *See Anderson v. City of N.Y.*, 132 F.Supp.2d 239, 246 (S.D.N.Y. 2001) (internal citation and quotation omitted). Because this witness was on Defendants' witness list, her deposition was "reasonably necessary" for trial preparation. *Id.*

"Even where the cost of a deposition transcript itself will be taxable under these standards, certain associated fees that are not necessary generally may not be taxed-for example, expedited service, delivery costs, appearance fees, and rough diskettes and/or ASCII disks." *Farberware*, 2009 WL 5173787 at \*5. Because Plaintiffs' requests for transcript costs include costs beyond the transcript and one copy for each deposition, the costs will be reduced accordingly. Specifically, for those deposition transcript invoices in which the costs are delineated (namely two depositions for Ben–Shmuel, and one deposition for Nolot, Grover, Rodicio, Berger) $6,778.46 will be awarded, which includes costs for one transcript plus a copy, as called for in the Southern District Local Rules, plus shipping and handling, and appearance fees where noted. For transcripts where the costs were not sufficiently delineated to distinguish and only a total was provided, included the depositions of Bapic, Lirtzman and Burgener, the total is discounted

by 35% to deduct any nontaxable fees that were included, totaling $2,910.96.

Thus, Plaintiffs' costs for deposition transcripts of $9,689.42 may be taxed.

### c. Trial Transcripts

█ Plaintiffs claim costs for trial transcripts, and Defendants oppose. As the Court stated in Farberware Licensing:

> "To determine whether daily transcripts are taxable costs, "[t]he relevant inquiry is whether the transcripts ... were necessary for defendant's use in the case." Factors to consider in determining whether the transcripts were necessary include the length and complexity of the case, whether more than one attorney for the requesting party was present at the trial, whether the transcript was a mere convenience and other extraordinary circumstances."

*Farberware*, 2009 WL 5173787 at \*4 (citation omitted).

Although the trial lasted only four days, there were numerous issues, witnesses and exhibits. Also, the Court required detailed proposed findings of fact and conclusions of law, and both Plaintiffs and Defendants provided such proposed findings while citing extensively to the trial transcript. Such requirements made ordering the trial transcript necessary. *See Electronic Specialty Co. v. International Controls Corp.*, 47 F.R.D. 158, 161 (S.D.N.Y. 1969) (Awarding costs of transcript because, *inter alia*, "[t]he transcript was ... made necessary by the fact that the parties were required to submit proposed findings of fact and conclusions of law at the close of the hearing.")

Accordingly, trial transcript costs in the amount of $1,544.49 are allowed.

### D. Consumer Survey

Defendants dispute the costs Plaintiffs' claim for the consumer survey. Granting

these costs is within the Court's discretion. *See Tri–Star Pictures, Inc. v. Unger,* 42 F.Supp.2d 296, 307 (S.D.N.Y.1999) (Granting application for costs of consumer survey where the "Court accepted consumer surveys from both parties and found them to be informative and helpful in the advancement of their claims," and "relied on the presented surveys in adjudicating this case.") Although courts in this district have at times declined to award costs for consumer surveys, that has occurred, for example, when the court found the survey to be "minimally probative." *See Simon & Schuster, Inc. v. Dove Audio, Inc.,* 970 F.Supp. 279, 302 n. 23 (S.D.N.Y.1997). Because the Court credited Plaintiffs' survey and relied on it in reaching its decision, *Audemars,* 46 F.Supp.3d at 272–73, 277–78, 280–81, 2014 WL 47465 at *4, *9, *12, these costs will be awarded. Plaintiffs have provided invoices showing $56,000 for the design and execution of the survey, $7,467 in out-of-pocket costs, and $3,637.50 in expenses for the photographs used in the consumer survey, for a total of $67,104.50.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs will be awarded additional treble damages for the posttrial period, as well as attorney's fees and costs.

## IV. JUDGMENT AND FINAL IN- JUNCTION

For the reasons set forth herein and in the Findings of Fact and Conclusions of Law (Dckt. No. 165), it is hereby OR-DERED, ADJUDGED, and DECREED that Plaintiffs shall take judgment against Defendants, and further that:

1. Defendants, their officers, agents, servants, employees, attorneys and all other persons who are in active con-cert or participation with them, are hereby permanently enjoined

 A. From manufacturing, importing, distributing, shipping, advertising, marketing, promoting, selling or offering from sale any product bearing Plaintiffs' Royal Oak trade dress, including U.S. Trademark registrations Nos. Nos. 2,866,069, No. 3,480,826, No. 4,232,239 and No. 4,232,240, or any trade dress confusingly similar thereto or likely to cause confusion therewith, in the sale, offering for sale, distribution or advertising of any products.

 B. From manufacturing, importing, distributing, shipping, advertising, marketing, promoting, selling or offering from sale watches identified by partial model numbers or SKU numbers SL–10541, SL–10534, SL–10535, or any colorable variations thereof, or any product containing a confusingly similar trade dress.

2. Within fifteen (15) calendar days of the entry of this Judgment, Defendants shall recall all remaining inventory of any Trimix watches, including those identified by partial model numbers or SKU numbers SL–10541, SL–10534, SL–10535, from any customers known or believed by Defendants to have acquired such watches for the purpose of resale on any retail platform. At 30 and 60 day intervals after the entry of this Judgment, Defendants shall file and serve a report in accordance with 15 U.S.C. § 1116(a), in writing, and affirmed under oath or penalty of perjury, that sets forth in detail the manner and form in which Defendants have complied with this recall order.

3. The Court enters monetary judgment against Defendants, jointly and severally, in favor of Plaintiffs in the

amount of $10,847,784.24, which consists of Defendants' pre-trial profits of $3,257,739.82, and Defendants' posttrial profits of $358,188.26, trebled pursuant to 15 U.S.C. § 1117(b).

4. Plaintiffs are awarded $888,511.42 in attorney's fees and costs, which consists of $811,237.50 in attorney's fees, $9,689.42 for deposition transcripts, $480 in filing and service fees, and $67,104.50 in costs for the consumer survey credited and used by the Court.

5. Trial transcript costs in the amount of $1,544.49 are allowed.

SO ORDERED.